Daniel C. DIAZ, Plaintiff-Appellant,

v.

CENTRAL PLAINS REGIONAL HOSPITAL, Defendant-Appellee.

No. 86–1329
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1986.

John Judge, Amarillo, Tex., for plaintiff-appellant.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this diversity action for medical malpractice and wrongful death, Daniel Diaz appeals the decision of the district court dismissing this action. Diaz, on behalf of his decedent wife Racquel Diaz, alleges that Central Plains Regional Hospital (Central Plains) violated 42 U.S.C. §§ 1983 and 1985, the Texas Wrongful Death Statute, Tex.Civ.Prac. & Rem. § 71.001 *et seq.* and § 71.021, and the Texas Tort Claims Act, § 101.001 *et seq.* In defense, Central Plains claimed governmental immunity under Texas law. The district court granted Central Plains' motion to dismiss. On appeal, Diaz claims that Central Plains was not entitled to the protection of governmental immunity; alternatively, Diaz asserts that even if Central Plains was entitled to immunity, the hospital's actions fell within one of the exceptions to governmental immunity provided by Texas law. We disagree with Diaz's assertions and affirm the judgment of the district court.[1]

[1.] Diaz does not appeal the district court's dismissal of his § 1983 and § 1985 claims. Ac-

## I.

In reviewing a motion to dismiss, we "must accept as true all well-pleaded facts in the complaint." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). *See generally* Wright & Miller, *Federal Practice & Procedure: Civil* § 1357, at 594 (1969). Using this standard we set out the facts of the case. In April 1983 the decedent was placed under the care of Dr. Donald Moore, who determined that she had a fibrous lump in her right breast and recommended that it be removed. Surgery on the decedent was to be performed by Dr. Moore in Central Plains on May 17.

On May 16 Mrs. Diaz presented herself at Central Plains but was denied admission because she did not have either money or health insurance with which she could pay for her hospitalization. Mrs. Diaz was unable to gain admission to a hospital until June 19. On that date she was admitted to Northwest Texas Hospital for the surgery. The operation revealed a cancerous tumor from which she subsequently died on February 19, 1985. Diaz then sued Central Plains and alleged that the hospital had been negligent in not admitting his wife into the hospital on May 16, 1983. Diaz asserts that if Central Plains had admitted his wife on May 16, her cancer would have been contained. Diaz claims that the delay from May 16 to June 19 was fatal. In defense to Diaz's suit, Central Plains claimed that it was entitled to the protection of governmental immunity under Texas law. The district court granted Central Plains' motion to dismiss and this appeal followed.

## II.

### A.

Under Texas law the state is immune from liability for any alleged tort unless an exception to such immunity is provided for

cordingly, we only address Diaz's claims under Texas law.

in the Texas Tort Claims Act. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976). Counties and other political subdivisions or agencies of the state perform governmental functions and are entitled to the same immunity protection as the state. Like the state, counties and other political subdivisions can only be liable where an exception to such immunity is provided for in the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code § 101.001 *et seq.* (Vernon 1986); *Turvey v. City of Houston*, 602 S.W.2d 517, 519 (Tex.1980). Until February 1, 1984, Central Plains was owned and operated by the Hale County Hospital Authority (the Hospital Authority), which was established pursuant to Texas law. *See generally* Tex.Rev.Civ.Stat.Ann. art. 4494r (Vernon 1976 & Supp.1986). Texas courts have held that "governmental immunity exists as applied to the ... ordinary operation of [a] hospital [authority], or in the usual conduct of hospital services." *Ritch v. Tarrant County Hospital District*, 476 S.W.2d 950, 951 (Tex.Civ.App.— Fort Worth), *aff'd*, 480 S.W.2d 622 (Tex.), *cert. denied*, 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669 (1972). *See also Garcia v. Memorial Hospital*, 557 S.W.2d 859, 860 (Tex.Civ.App.—San Antonio 1977, no writ) (county hospital authority is a political subdivision of the state of Texas).

Although Central Plains would appear to have governmental immunity under *Ritch*, Diaz makes a two-step argument to show why Central Plains is not entitled to claim governmental immunity. First, Diaz claims that the day Mrs. Diaz died, February 19, 1985, is the relevant date to determine whether or not govermmental immunity existed as opposed to the day Mrs. Diaz was denied admission to Central Plains, May 16, 1983. Second, Diaz claims that Central Plains is not entitled to governmental immunity protection on the date Mrs. Diaz died because on February 1, 1984, the Hospital Authority entered into an agreement with National Medical Enterprises, Inc., (National Medical) to operate Central Plains. Although the record is unclear, National Medical appears to be a for-profit corporation; at a minimum, it is not a governmental unit under Texas law. Since National Medical is not a governmental unit, Diaz claims that Central Plains lost any governmental immunity it had when it entered into the agreement with National Medical. Thus, Diaz concludes that on February 19, 1985, Central Plains was not entitled to immunity. Conversely, Central Plains argues that May 16, 1983, is the proper date for determining whether Central Plains has governmental immunity. The district court ruled that the latter date was the determinative date.

■ We agree with Central Plains and the district court that the date Mrs. Diaz was refused admission to Central Plains, May 16, 1983, rather than the date Mrs. Diaz died, February 19, 1985, is the proper date for determining whether or not the hospital was a governmental unit of the state entitled to immunity. Pursuant to section 16.003 of the Texas Civil Practice and Remedies Code:

(b) A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

Tex.Civ.Prac. & Rem.Code § 16.003(b) (Vernon 1986). Thus, Diaz's cause of action accrued on February 19, 1985, when Mrs. Diaz died. This does not mean, however, that this is the relevant date for determining all legal liabilities in the suit. Central Plains' liability to Mrs. Diaz, if any, arose when she was refused admission to the hospital on May 16, 1983. It is the hospital's ownership on that date, not the day Mrs. Diaz died, that determines whether or not Central Plains can claim governmental immunity. Section 16.003(b) merely sets forth the time period in which the decedent's estate must file an action for wrongful death in order to defeat a statute of limitations defense. Nothing in the statute, the case law, or the briefs of the parties has pointed us to any authority that holds that the date a cause of action for wrongful death accrues is also meant to be the determinative date for deciding all legal

issues in the case. On May 16, 1983, it is undisputed that Central Plains was operated by the Hospital Authority. Under *Ritch,* Central Plains was entitled to claim governmental immunity from tort actions.[2]

### B.

■ Diaz also argues that even if Central Plains was entitled to claim governmental immunity, his claim falls within one of the exceptions to immunity provided by Texas law. Under the Texas Tort Claims Act a governmental unit is liable for the following:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a *condition or use* of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex.Civ.Prac. & Rem.Code § 101.021 (Vernon 1986) (emphasis added). Diaz's argument, in effect, is that by not admitting Mrs. Diaz to Central Plains on May 16, 1983, and not using any of the hospital's equipment on her, Central Plains violated subsection (2) of section 101.021.

Texas case law, however, does not support Diaz's interpretation of section 101.-021(2). In *City of Denton v. Van Page,* 701 S.W.2d 831 (Tex.1986), a plaintiff who received injuries in a fire sued the city of Denton for its alleged negligence in failing to sufficiently inspect and discover the condition of the building resulting from previous fires. The court upheld judgment for the city on the ground that this was a governmental function and did not constitute a claim involving a condition or use of tangible or real property under section 101.021(2) but simply involved alleged negligence of a governmental function. *Id.* at 835. Another case, *Texas Department of Corrections v. Herring,* 513 S.W.2d 6 (Tex. 1974), involved a prisoner who brought suit for failure to provide adequate medical care. The Texas Supreme Court held that the prisoner had not stated a cause of action for use of tangible property. The court agreed with the Department of Corrections' argument that "a *failure* to give medical care cannot involve the use of tangible property" that is required by the Texas Tort Claims Act. *Id.* at 9 (emphasis added).

In *Velasquez v. Jamar,* 584 S.W.2d 729 (Tex.Civ.App.—Tyler 1979, no writ), two parents brought a negligence suit against a state-operated hospital on behalf of their infant daughter alleging that the hospital was responsible for injuries sustained by the daughter at the time of her birth. However, there was no proof of the use of defective equipment. The hospital alleged that they were protected by governmental immunity. The court of appeals agreed, and distinguished the cases where a waiver was found to exist on the ground that waiver was only found where tangible property was either deficient or inappropriate for the purpose for which it was used. The court rejected the argument that a cause of action exists "whenever a government employee and a piece of tangible property are combined." *Id.* at 732.

The reasoning of *Velasquez* further persuades us that the waiver to governmental immunity is not applicable in the instant case. *Velasquez* indicates that not only must there be a use of equipment in order to fall within an exception to governmental immunity; there must be a use of defective equipment. Thus, in the instant case, the non-use of non-defective equipment clearly does not fall within an exception to governmental immunity.

---

**2.** We express no opinion as to what effect, if any, the agreement with National Medical to operate Central Plains has on the hospital's governmental immunity after that date.

The one case cited by Diaz, *Jenkins v. State*, 570 S.W.2d 175 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ), is distinguishable. *Jenkins* involved an action brought by a prisoner for improper and negligent medical treatment while he was incarcerated. Among his allegations, the prisoner alleged that the state was liable for injuries caused by the prison medical staff's failure to diagnose and treat his epileptic condition properly. The court reversed the grant of summary judgment for the state and held that the provision for waiver of immunity for personal injuries negligently caused by "some use of tangible property" encompassed injuries caused by "the *nonuse* of tangible property." *Id.* at 178 (emphasis in original). The court recognized, however, that the extent to which the legislature intended to waive sovereign immunity was "far from clear." *Id.* What distinguishes *Jenkins* from the instant case is the fact that in *Jenkins* a relationship already existed between the prisoner and the State, whereas no relationship ever existed between Mrs. Diaz and Central Plains. Furthermore, in *Herring, supra,* the Texas Supreme Court held that the state was not liable for failure to provide adequate medical care even though a relationship existed between the plaintiff

and a governmental unit.[3] Consequently, we agree with the district court that the exceptions to governmental immunity listed in section 101.021 do not apply in this case. Thus, Central Plains was entitled to claim governmental immunity.

### C.

Finally, Diaz also argues that Central Plains had a duty to provide medical services to Mrs. Diaz under Tex.Rev.Civ.Stat. Ann. article 4438a.[4] It appears that Diaz is raising this argument for the first time on appeal. Normally, a federal appellate court will not consider an issue not raised in the district court. *See, e.g., United States v. Rohm & Haas Co.,* 500 F.2d 167, 177 (5th Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1352, 43 L.Ed.2d 439 (1975). There is no mention of article 4438a(a) in Diaz's complaint, in any of the papers filed in the district court, or in the opinion of the district court. On reviewing the granting of a motion to dismiss, we liberally construe the complaint in favor of the plaintiff. *See, e.g., Rathborne v. Rathborne,* 683 F.2d 914, 918 (5th Cir.1982). Liberally construing Diaz's complaint, we nevertheless hold that this issue is being raised for the first time on appeal and we decline to consider it.[5]

3. Although *Jenkins* is inconsistent with *Herring,* we follow the view of *Herring* since it is an opinion of the Texas Supreme Court. Furthermore, the recent decision of the Texas Supreme Court in *City of Denton v. Page, supra,* reinforces our belief that Texas courts would not hold Central Plains liable.

4. Article 4438a provides in pertinent part that:

Section 1.(a) No officer, employee, or member of the hospital medical staff of a general hospital shall deny emergency services available at the hospital to a person diagnosed by a licensed physician as requiring emergency services because the person is unable to establish his ability to pay for the services or because of race, religion, or national ancestry.

\* \* \* \* \* \*

(c) In this Act "emergency services" means services that are usually and customarily available at the respective hospital and that must be provided immediately to sustain a person's life to prevent serious permanent disfigurement or loss or impairment of the function of a bodily member or organ, or to provide for the care of a

woman in active labor if the hospital is so equipped and, if the hospital is not so equipped to provide necessary treatment to allow the woman to travel to a more appropriate facility without undue risk of serious harm.
Tex.Rev.Civ.Stat.Ann. art. 4438a(a) (Vernon 1986).

5. We note in passing, moreover, that we are doubtful that the situation Mrs. Diaz faced would be covered under article 4438a(a). Mrs. Diaz lived over 21 months after she was denied admission to Central Plains. In addition, Dr. Morris, the physician who recommended the surgery for Mrs. Diaz, stated in his deposition that it was "not likely" that the 30 day delay Mrs. Diaz encountered in having the surgery affected the ultimate outcome of her case. This is not the life-threatening circumstance meant to be encompassed by article 4438a(a). Furthermore, it appears that a governmental unit can be liable only for a claim within one of the two exceptions to governmental immunity stated in the Texas Tort Claims Act. A claim based on article 4438a(a) does not fall within one of these exceptions.

## III.

We agree with the district court that Central Plains Regional Hospital was entitled to governmental immunity under Texas law and that neither exception to governmental immunity was applicable. Accordingly, the judgment of the district court is AFFIRMED.