Rayburn HALE, Jr. and Patricia J. Upton Hale, Plaintiffs-Appellees,

v.

Mehdi SHEIKHOLESLAM, M.D., Defendant,

Fannin County Hospital, Defendant-Appellant.

No. 83–2047.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1984.

Rehearing Denied March 30, 1984.

Fred E. Davis, Austin, Tex., for defendant-appellant.

Stephen F. Hefner, Sherman, Tex., for plaintiffs-appellees.

Before POLITZ, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

The plaintiffs, Rayburn Hale, Jr., and his wife, Patricia J. Upton Hale, brought suit against Mehdi Sheikholeslam, M.D., and Fannin County Hospital, alleging medical malpractice by Dr. Sheikholeslam while he had staff privileges at Fannin County Hospital. The jury returned a verdict in favor of the plaintiffs, holding Dr. Sheikholeslam and the defendant hospital jointly and severally liable. The federal district court entered judgment on the verdict. Fannin County Hospital's motions for summary judgment, instructed verdict, judgment n.o.v., and new trial were all denied by the district court. The hospital now appeals the judgment, asserting governmental immunity. Dr. Sheikholeslam has not appealed. We reverse and render as to Fannin County Hospital.

FACTS

Fannin County Hospital is located in Bonham, Texas. At the time of the injury to Mrs. Hale, the Hales resided in Bonham. They are now residents of Oklahoma and brought this suit in the federal district court under its diversity jurisdiction.

Mrs. Hale became pregnant in 1976. Upon recommendation of her father-in-law, a former patient of Dr. Sheikholeslam, she selected Dr. Sheikholeslam as her physician. Her choice was apparently not based in any part on Dr. Sheikholeslam having staff privileges at Fannin County Hospital (the hospital). Mrs. Hale began seeing Dr. Sheikholeslam (the doctor) sometime after her second month of pregnancy, and the relationship apparently went well until Mrs. Hale was in her sixth month of pregnancy. Mrs. Hale alleges that, at that point, problems developed in their relationship and that the doctor began being rude to her. The Hales felt constrained to continue with the doctor, however, because they had prepaid his fees for prenatal care and delivery. The uneasy relationship between the Hales and the doctor was unknown to the hospital.

Mrs. Hale subsequently gave birth to a normal child at the hospital. Problems with the doctor continued; he delayed in coming to the hospital before the delivery, he refused to administer any kind of anesthetic during the delivery, and after the delivery, he told Mr. Hale never to call him at 2:00 a.m. again. The doctor ordered Mrs. Hale's release twenty-four hours after the delivery, despite the fact that a three-day stay was usual and that the Hales had prepaid a four-day stay. Although she was still experiencing vaginal bleeding, Mrs. Hale was, in fact, released on the morning of June 1, 1977, less than 30 hours after delivery.

The bleeding problems continued without treatment until June 7, 1977, when Mrs. Hale began to hemorrhage. Mr. Hale notified the doctor, who instructed Mr. Hale to take his wife to the hospital and said that he would instruct the hospital to give Mrs. Hale a shot to stop the bleeding. Mrs. Hale arrived at the emergency room at the hospital at about 3:00 a.m. on June 7. She received an injection, but the bleeding continued. The hospital staff placed Mrs. Hale in a treatment room, but they could not admit her until they were able to contact the doctor. When the doctor arrived at 8:00 a.m., Mrs. Hale was admitted and began receiving blood transfusions. The heavy bleeding continued, and the doctor reinjected Mrs. Hale during the transfusion, over the objections of an attending nurse. The doctor then performed dilation and curettage (D & C) surgery, without written permission from either of the Hales. After the surgery, the doctor left the hospital without talking to either Mr. or Mrs. Hale. During Mrs. Hale's stay in the hospital after the D & C, Mr. Hale learned from the nursing staff that, after the delivery of the child, the doctor had failed to prescribe medication to encourage the contraction of Mrs. Hale's uterus. The doctor released Mrs. Hale thirty-six hours after the D & C, despite her weakness and continued bleeding.

On June 19, 1977, Mrs. Hale hemorrhaged again. Her husband then made a change;

he took her to the Texoma Medical Center in Denison and placed her under the care of Dr. David Buring. Dr. Buring performed a second D & C and discovered that Mrs. Hale's uterus was so infected and damaged that the D & C could not stop the bleeding; he subsequently performed a hysterectomy on his twenty-year-old patient.

Mr. and Mrs. Hale brought suit against the doctor and the hospital, seeking damages for malpractice [1]; the case was tried to a jury in November 1982. Two pretrial motions by the hospital for summary judgment were denied from the bench at the beginning of the trial. The jury returned a verdict for the Hales in the amount of $100,000 and held the doctor and the hospital jointly and severally liable. Motions by the hospital for directed verdict, judgment n.o.v., and new trial were all denied by the district court. All of the hospital's motions asserted that, as a governmental unit, it was immune from tort liability except to the limited extent permitted by the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon Supp.1982–83), and no exceptions having been shown, its immunity remained intact.

THE ISSUE

The parties agree that the hospital is a unit of government and that it may be held liable to the Hales only under the exceptions provided in section 3 of the Texas Tort Claims Act.[2] *State v. Terrell*, 588 S.W.2d 784 (Tex.1979). They do not agree as to whether such an exception was shown in the instant case. Section 3 recognizes three exceptions to governmental immunity to tort liability: negligent operation of a motor vehicle by a government employee, defects in the condition or use of real property, and defects in the condition or use of tangible personal property. The only exception which is applicable here is the condition or use of tangible personal property. If such an exception exists and is to be the basis for the liability of the hospital, it must be both pleaded and proved.

ANALYSIS

■ In a recent case, the Texas Supreme Court has stated that any liability of a governmental unit under section 3 must arise from the negligent conduct of an employee.

> [T]he proximate cause of the damages for death or personal injury must be the negligence or wrongful act or omission of the officer or employee acting within the scope of his employment or office. The negligent conduct, however, must involve "some condition or some use" of tangible property under circumstances where there would be private liability.

*Salcedo v. El Paso Hospital District,* 659 S.W.2d 30, 33 (Tex.1983). *See also Lowe v. Texas Tech University,* 540 S.W.2d 297, 299 (Tex.1976). In the instant case, the plaintiffs neither pleaded nor proved that the doctor was an officer or employee of the hospital. Clearly, the doctor was not an

---

1. In February, 1978, several months after Mrs. Hale's injury, the hospital revoked the doctor's staff privileges. This action was an automatic response to the failure of the doctor to maintain a valid state license. The loss of the state license and subsequent suspension of privileges are not related to Mrs. Hale's complaints.

2. Art. 6252–19. Tort Claims Act
   Liability of governmental units
   Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of flood-gates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death and to $10,000 for any single occurrence for injury to or destruction of property.

employee; there is no evidence or pleading that he received compensation from the hospital or that the hospital exercised any control over his treatment of patients. The doctor was merely allowed to use the facilities of the hospital when, in the doctor's judgment, hospital care was necessary. It would appear that the doctor was no more than an independent contractor, selected by the patient and having no employer-employee, principal-agent, partnership or similar legal relationship to the hospital. In such circumstances, the hospital cannot be held liable for his actions. *Jeffcoat v. Phillips,* 534 S.W.2d 168, 173 (Tex.Civ.App.—Houston 1976, writ ref'd n.r.e.). Because the doctor has not been shown to be an officer or employee of the hospital, any pleadings or proof concerning the doctor's actions and use or misuse of tangible personal property owned by the hospital do not establish an exception to sovereign immunity under section 3 of the Texas Tort Claims Act.

If the hospital is to be held liable, it must be because of "some condition or some use of tangible [personal] property" by an employee acting within the scope of his or her employment. *Salcedo* at 33. "Use," as used in this statute, has been defined as "to put or bring into action or service, to employ for or apply to a given purpose." *Id.* (quoting *Beggs v. Texas Department of Mental Health and Retardation,* 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd)). Texas courts have construed the use provision of section 3, under some circumstances, to include nonuse. *See, e.g., Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976) (athlete injured while wearing school-owned uniform which did not include knee brace or tape); *Overton Memorial Hospital v. McGuire,* 518 S.W.2d 528

(Tex.1975) (patient fell out of bed which did not have guard rails attached); *Mokry v. University of Texas Health Science Center,* 529 S.W.2d 802 (Tex.Civ.App.—Dallas 1975, writ ref'd. n.r.e.) (plaintiff's eyeball slid down drain which did not have strainer in place). In each case, the condition of the state-owned property was defective or deficient and was itself the cause of the injury. *See also Hartman v. Hardin Memorial Hospital,* 587 S.W.2d 55 (Tex.Civ.App.—Beaumont 1978) (hypodermic needle broke off under skin of patient).

■ It is not necessary to plead that defective personal property caused the injury.[3] If nondefective property is alleged to have been used or misused by an officer acting within the scope of employment so as to cause the injury, a cause of action is stated. *Salcedo* at 32.[4] In such cases, the personal property may be free of defects, but if its use by an employee is the proximate cause of the injury, an exception falling under section 3 may be shown. *Id.* at 32–33. *See also Lowe v. Texas Tech University* at 303 (Greenhill, C.J., concurring). We must therefore determine whether a cause of action has been stated by the Hales by the pleading of either a defective condition of tangible personal property or negligent use of such property by an employee of the hospital as the proximate cause of Mrs. Hale's injury.

■ We have examined the Hales' first amended original complaint in order to ascertain precisely what actions or omissions the Hales alleged with respect to the hospital's employees. The following general allegations are noted. Mrs. Hale was admitted to the hospital's labor room on May 31, 1977. (p. 4) The staff had a discussion

**3.** "We hold, therefore, an allegation of defective or inadequate tangible property is not necessary to state a cause of action under the Act if 'some use' of the property, rather than 'some condition' of the property, is alleged to be a contributing factor to the injury." *Salcedo* at 32.

**4.** " 'The statutory language 'condition or use' of property implies that such property was furnished, was in bad or defective condition, *or*

*was wrongly used*' (emphasis added)." *Salcedo* at 32 (quoting *Lowe, supra,* at 302 (Greenhill, C.J., concurring). "We hold, therefore, that Mrs. Salcedo has alleged her loss was proximately caused by the negligence of the hospital district's employees in the use of tangible property. Her allegations state a cause of action within section 3 of the Texas Tort Claims Act." *Id.* at 33.

with the doctor before Mrs. Hale was taken to the delivery room. There are no allegations concerning the content of the conversation. (p. 4) The hospital released Mrs. Hale, on orders of the doctor, twenty-nine and a half hours after the delivery. (p. 4) The hospital employees did not give instructions to either of the plaintiffs concerning Mrs. Hale's continued bleeding. (p. 4) After Mrs. Hale began to hemorrhage on June 7, the hospital staff gave to Mrs. Hale, on orders of the doctor, an injection which was intended to halt the bleeding. When the bleeding continued, the nurse-employees contacted the doctor, who ordered one unit of blood. (p. 5) The nurse-employees informed Mr. Hale that Mrs. Hale was losing more blood than the transfusion was replacing. (p. 5) Nurse-employees informed Mr. Hale that the doctor had told them that the reason for Mrs. Hale's early release after her delivery was that the Hales could not afford a longer stay, and the nurses also stated that the doctor had failed to prescribe proper medication to encourage contraction of Mrs. Hale's uterus following delivery. (p. 6) The nursing staff expressed surprise that Mrs. Hale was to be released so soon after the D & C and while she continued to bleed. (p. 7)

The Hales pleaded the following specific negligent acts (p. 8–9): (1) failure to provide proper or appropriate antibiotics (Nos. 1, 10); (2) failure to provide a sterile environment for delivery and postpartum care (No. 9); (3) failure to prevent premature release of Mrs. Hale after delivery and after the D & C (Nos. 11, 12, 14); (4) failure to request that tests be made, through equipment owned by it, to ascertain that Mrs. Hale's vagina was free from foreign material (No. 13); (5) failure to exercise reasonable care in granting staff privileges to the doctor (No. 15); (6) failure to see that medication for contraction of Mrs. Hale's uterus after delivery was prescribed and administered by its personnel (No. 16).

Of the general allegations, only the injection and the transfusion may fall within the use of tangible personal property exception of section 3. There are no allegations by the Hales that either the injection or the blood was defective, that any misuse occurred or that any harm resulted from either treatment. The general allegations do not, therefore, state an exception which falls under section 3 of the Texas Tort Claims Act.

Specific allegations that the hospital prematurely released Mrs. Hale, failed to exercise reasonable care in granting staff privileges to the doctor, and failed to request additional tests on Mrs. Hale do not involve a condition or use of personal property and cannot, therefore, support a cause of action under section 3. The remaining allegations assert nonuse of personal property (failure to provide antibiotics and postpartum medication) and a deficient condition of property (nonsterile environment). Such allegations may be the basis of a waiver of immunity only if the use or condition is the proximate cause of the harm. *Salcedo, supra.*

The testimony adduced at trial demonstrated that the proximate cause of the injury to Mrs. Hale was the acts, omissions, and errors in judgment by the doctor. The plaintiffs' own witness, Dr. Buring, testified that the dosage of antibiotics which was administered in the hospital was appropriate, but that Mrs. Hale probably should have been prescribed antibiotics to take home. (R. 415) In answer to a query by the court, Dr. Buring testified that he would say that it was "more likely true than not true that her hospitalizations previously contributed to the problem of infection." At the request of the court to clarify his answer, Dr. Buring testified that he specifically referred to the treatment by the doctor. (R. 432). Dr. Buring also stated that he could not determine that any of the actions of the hospital's personnel or any course of treatment carried out by the nursing personnel of the hospital caused or contributed to Mrs. Hale's injury. (R. 434–35). Again in response to a question from the court, Dr. Buring testified that the entire treatment afforded by the doctor contained deviations from standard recognized medical practice, and that such deviations more likely than not caused Mrs. Hale's complications. (R. 449). The evidence does not

show that the condition or use of tangible personal property by hospital personnel was the proximate cause of Mrs. Hale's injury; rather, it tends to show that the acts of hospital employees were *not* the proximate cause.

With respect to the failure to provide medication, the plaintiffs have failed to allege or prove that prescribing medication was within the scope of employment of the attending employees. Mrs. Hale was a private patient with her own physician. There is no allegation that she was, or should have been, attended by a house physician. There is no mention in the pleadings of contact with any employees other than the nursing staff. By law, only licensed physicians may prescribe controlled substances. Tex.Rev. Civ.Stat.Ann. art. 4476–15 (Vernon Supp. 1982–83). Also by law, nurses are forbidden to prescribe therapeutic or corrective measures. Tex.Rev.Civ.Stat.Ann. art. 4518, § 5 (Vernon Supp.1982–83). Clearly, prescription of medication was not within the scope of the nursing staff's employment.

The Hales have asserted that Texas waived sovereign immunity in 1975. In support of this contention they have directed us to various sections of the Texas Medical Liability and Insurance Improvement Act, Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp.1982–83). The cited statutes refer only to the appropriate statute of limitations for filing health care claims and do not in any way abrogate sovereign immunity. Finally, the Hales allege that the hospital should be held liable for intentional torts by the doctor. This issue was not raised in the district court and may not be raised for the first time on appeal.

The Hales have not alleged or proved that the condition of tangible personal property or use of such property by a hospital employee was the proximate cause of Mrs. Hale's injury. The conduct actually alleged does not fall within the waiver of immunity granted by section 3. It is therefore ordered that the judgment against the hospital be REVERSED and RENDERED.