**Judy HATLEY and William Johnson, Appellants,**

v.

**Lisa KASSEN, R.N.; Dallas County Hospital District D/B/A Parkland Memorial Hospital; Gurjeet S. Kalra, M.D.; and the University of Texas Southwestern Medical Center at Dallas, Appellees.**

**No. 05–91–01122–CV.**

Court of Appeals of Texas, Dallas.

Dec. 3, 1992.

David R. Weiner, John K. Horany, Law Office of Windle Turley, P.C., Dallas, for appellant.

Thomas L. Cox, Jr., Dallas County Hosp. Dist., Richard Bernays, Touchstone Bernays Beall Smith & Johnson, Dallas, Robbie Malone, Asst. Atty. Gen., James Ludlum, Jr., Ludlum & Ludlum, Austin, for state.

Before ENOCH, C.J., and BISSETT[1] and CARVER[2], JJ.

## OPINION

ENOCH, Chief Justice.

Judy Hatley and William Johnson appeal from a summary judgment granted in favor of University of Texas Southwestern Medical Center at Dallas (Southwestern) and Gurjeet S. Kalra, M.D., and a directed verdict granted in favor of Lisa Kassen, R.N., and Dallas County Hospital District d/b/a Parkland Hospital (Parkland). We reverse and remand.

## FACTS

Pennie Johnson, now deceased, was the daughter of Judy Hatley and William Johnson. Pennie Johnson was a chronic mental-health patient. After multiple admissions over nearly a ten-year period, Johnson's treatment team decided that long-term institutionalization was not therapeutic. Instead, she became an outpatient in the forensic unit of the Dallas County Mental Health & Mental Retardation System (MHMR). Thereafter, a difficult-patient file was developed for use by treating physicians. The recommended treatment was to discharge Johnson when she presented herself to any mental health care provider unless she displayed significantly different symptoms than those she had in the past.

On February 13, 1988 at 11:55 p.m., a Department of Public Safety trooper discovered Johnson walking down the Dallas North Tollway and threatening to harm herself. The trooper took Johnson to Parkland's emergency room, where Johnson sought voluntary admission.

Robert L. Knowles, R.N., a Parkland employee, recorded in his nursing assessment that Johnson complained of feeling more depressed and that she had taken medication seven times that day, a dosage exceeding the prescription. He testified that a Parkland employee confiscated her pills and placed them in the nurses' station "after staff witnessed her taking them." Knowles testified that after Johnson was discharged, Johnson asked for her pills to be returned and became verbally abusive when they were not returned. Knowles asked Lisa Kassen, R.N., the charge nurse at the Parkland psychiatric emergency room, to determine whether it was appropriate to keep Johnson's medication.

Kassen testified that Johnson threatened to throw herself in front of a car if her medication was not returned to her. Kassen stated that she, Dr. Kalra, and Knowles jointly decided not to return the medication. Kassen told Johnson that she would return the medication only if Johnson agreed to go home in a taxi paid for by Parkland. Johnson responded that she did not want to go home.

Dr. Kalra testified that in February 1988, he was a third-year resident at Southwestern and worked at Parkland's psychiatric emergency room from time to time. He evaluated Johnson after midnight on February 14 and decided that Johnson should be discharged in accordance with the difficult-patient file because there was no change in her mental status. He testified that he personally did not take medication away from Johnson, that he was unaware

1. The Honorable Gerald T. Bissett, Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Retired, sitting by assignment.

2. The Honorable Spencer Carver, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

of Johnson's threat to take her life if her medicine was not returned, and that he participated in the decision not to return the medication to Johnson.

Phyllis Jones testified that she was employed by Dallas County MHMR in Parkland's psychiatric emergency room when she saw Johnson at about 12:15 a.m. on February 14 at Dr. Kalra's request. Jones testified that she and Dr. Kalra observed Johnson taking pills and that Dr. Kalra took the pills away from Johnson and placed them in the nurses' station.

Tony Manning, a Parkland security officer, testified that he responded to a call at approximately 12:30 a.m. on February 14. Dr. Kalra told him that Johnson was not going to be seen by the emergency psychiatric division, that she might create a scene, and that she should be escorted out of the hospital. Manning testified that Johnson told Dr. Kalra: "If you don't give me my drugs, I'll go jump in front of a truck." Dr. Kalra refused to return the drugs, and Johnson left the hospital unescorted.

Approximately thirty minutes after she left Parkland, Johnson stepped out into traffic on Interstate 35, was hit by a truck, and died at the scene.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Appellants' first seven points of error assert that the trial court erred by granting summary judgment to Southwestern and Dr. Kalra. Therefore, we will first set out the applicable standard of review:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Rule 166a of the Texas Rules of Civil Procedure provides a method of summarily ending a case that involves only a question of law and no genuine question of fact. TEX.R.CIV.P. 166a; *Spencer v. City of Dallas,* 819 S.W.2d 612, 615 (Tex.App.— Dallas 1991, no writ). The trial court's duty is to determine if there are any fact issues to try, not to weigh the evidence or determine its credibility and try the case on affidavits. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The purpose of rule 166a is to eliminate patently unmeritorious claims or untenable defenses. The rule is not meant to deprive the litigants of their right to a full hearing on the merits of any real issue of fact. *Spencer,* 819 S.W.2d at 615.

To be entitled to summary judgment, the defendants must either disprove an essential element of the plaintiffs' cause of action as a matter of law or establish all the elements of their defense as a matter of law. *Id.* Once the movant establishes a right to summary judgment on the issues presented, the nonmovant has the duty to respond by presenting the trial court with the genuine issues of material fact that preclude summary judgment. *Wheeler v. Aldama-Luebbert,* 707 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1986, no writ). When a summary judgment order does not specify the grounds on which it was granted, the order will be upheld on any ground that meets the above criteria. *See Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

## SUICIDE AS THE SOLE CAUSE OF DEATH DEFENSE

In points of error two and seven, appellants contend that summary judgment was granted erroneously in favor of Dr. Kalra and Southwestern under the affirmative defense of suicide as the sole cause of death. Appellants argue that the deposition evidence in support of Dr. Kalra's motion was insufficient because (1) the deponent was not established as an expert qual-

ified to testify regarding the applicable standard of care; (2) the applicable standard of care was not set out; and (3) the deponent failed to address whether suicide was the sole cause of the damages sustained. They further urge that if Dr. Kalra's motion for summary judgment was granted in error, then Southwestern's motion was also granted in error because Dr. Kalra acted as Southwestern's agent.

The applicable statute provides:

It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was ... committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense.

TEX.CIV.PRAC. & REM.CODE ANN. § 93.-001(a)(2) (Vernon Supp.1992).

■ To be entitled to judgment, Dr. Kalra and Southwestern have the burden of proving as a matter of law that (1) that Johnson was committing or attempting to commit suicide and (2) that this conduct was the sole cause of the damages. Once these two elements are established, it becomes appellants' burden to establish that the suicide or attempted suicide was caused wholly or partially by the failure of Dr. Kalra and Southwestern to comply with standard medical practices. Appellants admitted in their fifth amended petition that "Johnson did in fact throw herself in front of a pickup truck ... and was pronounced dead at the scene." Therefore, Dr. Kalra and Southwestern must prove that Johnson's conduct was the *sole cause* of her death.

In a joint motion for summary judgment, Southwestern and Dr. Kalra attached an excerpt from the deposition of Roger Gary Butler, M.D. to support their affirmative defense of suicide as the sole cause of death. In the deposition, Dr. Butler testi-

fied: "[b]ecause Pennie was so consistent throughout her visits and the issue was always the same, that she was chronically suicidal, and there wasn't much else to do, I feel that, you know, the standard of care was met based on that." Dr. Butler also stated that everything that could have been done in treating Johnson at Parkland was done.

■ As pointed out by appellants, the summary judgment proof does not establish Dr. Butler's credentials. An expert's testimony is admissible if (1) specialized knowledge or information exists pertinent to the facts at issue; (2) the witness possesses sufficient experience in his field of expertise; and (3) the issue or facts undergoing evaluation come within the field of the witness's specialized knowledge. *See* TEX.R.CIV.EVID. 702; HULEN D. WENDORF & DAVID A. SCHLUETER, TEXAS RULES OF EVIDENCE MANUAL 273 (2d ed. 1988). Dr. Butler necessarily must have knowledge about the treatment of mentally ill or suicidal patients to express an opinion on whether Johnson received the proper treatment under the circumstances. *See Milkie v. Metni*, 658 S.W.2d 678, 679 (Tex.App.—Dallas 1983, no writ) (party offering expert witness must establish that expert possesses special knowledge as to the matter about which he gives an opinion). Further, the excerpt from Dr. Butler's deposition does not address whether Johnson's conduct was the sole cause of the damages sustained. Viewing the summary judgment evidence most favorably to appellants, we find it insufficient to entitle Southwestern and Dr. Kalra to summary judgment as a matter of law on their affirmative defense that suicide was the sole cause of Johnson's death. We sustain points of error two and seven.

## OFFICIAL IMMUNITY OF DR. KALRA

■ In their third point of error, appellants assert that the trial court erred in granting Dr. Kalra's motion for summary judgment on the ground of the affirmative

defense of official immunity.[3] Appellants argue that a medical doctor employed by the State[4] is not entitled to official immunity because the act of treating a patient does not involve governmental discretion. Dr. Kalra responds that he examined Johnson to determine whether she met commitment criteria. He urges that his decision not to commit Johnson is quasi-judicial in nature and, thus, protected by the doctrine of official immunity.

The judicially fashioned doctrine of official immunity confers immunity on certain government officials to allow them to perform their duties without fear of damage suits for acts done in the course of those duties. *Doe v. McMillan*, 412 U.S. 306, 318–19, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973). Official immunity shields government employees only from suits complaining of official acts. *Bagg v. University of Tex. Medical Branch*, 726 S.W.2d 582, 586 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Employees of the State still can be sued in their individual capacities for wrongful unofficial acts. *Id.*

In Texas, a government employee is entitled to official immunity if the employee (1) occupies a position of quasi-judicial status, (2) acts in good faith, and (3) acts within his or her authority as a quasi-judicial employee. *Eakle v. Texas Dep't of Human Servs.*, 815 S.W.2d 869, 875 (Tex. App.—Austin 1991, writ requested); *Armendarez v. Tarrant County Hosp. Dist.*, 781 S.W.2d 301, 305 (Tex.App.—Fort Worth 1989, writ denied); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

An employee in a quasi-judicial position performs "discretionary" acts re-quiring personal deliberation, decision, and judgment involving the government. *Gleason v. Beesinger*, 708 F.Supp. 157, 159 (S.D.Tex.1989); *Baker*, 621 S.W.2d at 645. Government officials are subject to suit if their acts are "ministerial" acts involving obedience of orders or performance of duties requiring nongovernmental choices. *Gleason*, 708 F.Supp. at 159. Recognizing that the ministerial/discretionary dichotomy is "for all practical purposes unworkable because almost any act involves some discretion," at least three Texas appellate courts have applied a governmental/occupational test to determine whether a government employee occupies a position of quasi-judicial status. *Armendarez*, 781 S.W.2d at 305; *Christilles v. Southwest Tex. State Univ.*, 639 S.W.2d 38, 42–43 (Tex.App.—Austin 1982, writ ref'd n.r.e.); *Baker*, 621 S.W.2d at 645.

A government-employed physician is considered a quasi-judicial officer if he or she (1) has duties uniquely different from a physician engaged in a similar practice in the private sector, or (2) exercises a function unique to the government. *Armendarez*, 781 S.W.2d at 306. The treatment of a patient is not a quasi-judicial function if it involves the exercise of medical judgment rather than governmental judgment. *Gleason*, 708 F.Supp. at 162.

This governmental/occupational function distinction often favors individual citizens by allowing them to file tort claims for injury or death caused by government-employed physicians over the need to immunize government-employed physicians to promote the effective administration of government. *See Gleason*, 708 F.Supp. at

---

**3.** *See Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 109–10 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) ("official immunity," also called "qualified immunity" or "quasi-judicial immunity," is affirmative defense). "To the extent an employee has individual immunity from a tort claim for damages, it is not affected by [the Texas Tort Claims Act]." Tex.Civ.Prac. & Rem. Code Ann. § 101.026 (Vernon 1986).

**4.** It is undisputed that Southwestern is a "governmental unit" within the meaning of the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem.Code

Ann. § 101.001(2) (Vernon Supp.1992). A branch of the University of Texas has been held to be an agent of the State of Texas enjoying sovereign immunity. *Bagg v. University of Tex. Medical Branch*, 726 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Whether an employee of a governmental unit enjoys immunity from tort liability is a question distinct from that of the immunity of the sovereign itself. *Baker v. Story*, 621 S.W.2d 639, 643 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

161–63 (applying governmental/occupational test to physicians employed at state university health center and holding official immunity inapplicable in malpractice action arising from surgery); *Armendarez*, 781 S.W.2d at 306–07 (applying governmental/occupational test to county hospital physicians and holding official immunity inapplicable in medical malpractice action arising from infant delivery); *see also Christilles*, 639 S.W.2d at 42–43 (applying governmental/occupational test to professor of state university and holding official immunity inapplicable to his decision to use an actual drinking glass instead of a plastic one in a play). The policies underlying the official immunity doctrine are served because the threat of a lawsuit would not deter the public employee in the performance of his or her duties more than it would someone exercising the same duties in the private sector. *Armendarez*, 781 S.W.2d at 309.

■ Here, Dr. Kalra's affidavit attached to his motion for summary judgment states that he evaluated Johnson according to the difficult-patient file. He determined that her mental status was unchanged, concluded that she failed to meet the commitment criteria, and obtained a second opinion. Dr. Kalra's affidavit also states that his decision was made in good faith and within the course and scope of his position as a resident at Parkland.

Applying the *Armendarez* governmental/occupational acts test, we find that the acts described by Dr. Kalra were not quasi-judicial in nature, i.e., they were not different from a psychiatrist's acts in private practice or uniquely governmental in nature. Applying the discretionary/ministerial acts test yields the same result because Dr. Kalra states that he was following evaluation procedures of the difficult-patient file, i.e., following orders.

■ Dr. Kalra also urges that the issue of official immunity is now moot because appellants settled their claims with his employer, MHMR. He relies on the following: "[a] judgment in an action or a settlement of a claim under [the Texas Tort Claims Act] bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." TEX.CIV.PRAC. & REM.CODE ANN. § 101.106 (Vernon 1986). Although Dr. Kalra's affidavit states that he is currently an employee of the MHMR at Terrell State Hospital, in 1988 he was a resident of Southwestern on the "Terrell track" doing a rotation in the psychiatric emergency room at Parkland. Therefore, it cannot be concluded as a matter of law that Dr. Kalra was an employee of MHMR in 1988 when his acts or omissions gave rise to the claim.

Appellants' third point of error is sustained.

## SOVEREIGN IMMUNITY OF SOUTHWESTERN

In their fifth point of error, appellants contend that the summary judgment was granted erroneously on the theory that Southwestern is entitled to sovereign immunity because appellants failed to articulate an actionable claim under the Texas Tort Claims Act. In their fifth amended petition, appellants alleged that Southwestern and its agents, servants, or employees, Drs. Crowder, Puryear, and Kalra, acting within their course and scope of employment, proximately caused the death of Johnson by acts or omissions that "involved the use or condition of tangible personal property ... including the medical records, Difficult Patient File and the Psychiatric Emergency Room Policies and Procedures Manual authored by Dr. Puryear." Specifically, appellants alleged that Southwestern and its agents, servants, or employees negligently failed to follow the difficult-patient File and Parkland's procedure manual and negligently failed to see that Johnson's purse and property were returned to her prior to her discharge from Parkland. Appellants also claimed that Drs. Puryear and Crowder failed to see that the difficult-patient file was "correctly and properly transcribed and implemented."

Southwestern responds that appellants' claims (1) represent non-use, rather than use, of property, (2) are based on an al-

leged failure of judgment instead of a use of property, and (3) involve property incidental to Johnson's death that was not the proximate cause of her death.

Under the Texas Tort Claims Act, the sovereign is shielded from liability with a few statutorily defined exceptions:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

To allege a claim involving the "condition" of property, it is sufficient to allege that defective or inadequate property contributed to the injury. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31–32 (Tex.1983). To state a claim involving the "use" of nondefective property, it must be alleged that the property was used or misused by an employee[5] acting within the scope of employment so as to cause injury. *Hale v. Sheikholeslam*, 724 F.2d 1205, 1208

(5th Cir.1984); *Salcedo*, 659 S.W.2d at 32. The statutory requirement of "use" of tangible property subjects governmental units to liability for personal injury and death caused by the nonuse of tangible property. *Weeks v. Harris County Hosp. Dist.*, 785 S.W.2d 169, 171 (Tex.App.—Houston [14th Dist.] 1990, writ denied).[6] "Property" need not be prepared, furnished, controlled, or owned by the sovereign for purposes of the Texas Tort Claims Act. *Jenkins v. State*, 570 S.W.2d 175, 178 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ). "The determination of whether there has been a statutory waiver of immunity is a question of law for the court to decide based on the facts of the case." *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915, 917 (Tex.App.—Corpus Christi 1989, no writ).

Courts interpreting the condition or use of tangible property provision of the Texas Tort Claims Act note that it "is rather vague, and the extent of liability created thereby is far from clear." *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex.Civ. App.—San Antonio 1973, writ ref'd). Moreover, through the use of creative pleading, it is technically possible to characterize any imaginable claim as one involving the use of tangible property. *Lowe v. Harris County Hosp. Dist.*, 809 S.W.2d 502, 504 (Tex.App.—Houston [14th Dist.] 1989, no writ). We join the other courts in Texas that have urged the legislature to clarify the extent to which it intended to waive governmental immunity. *Lowe v.*

---

**5.** "Employee" is defined as:
  [A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.
  TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(1) (Vernon 1986).

**6.** We note that the Corpus Christi Court of Appeals has reached the opposite conclusion. *See Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied) (governmental immunity does not ex-

tend to nonuse of tangible personal property). However, the supreme court has held that "failure to provide" or "failure to furnish" tangible property subjects a governmental entity to liability under the Texas Tort Claims Act. *See Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex.1989) (failure to provide life preserver); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (failure to furnish proper protective items as part of football uniform). And, one appellate court could not discern any difference between "misuse" and "failure to properly use." *Green v. City of Dallas*, 665 S.W.2d 567, 570 (Tex.App.—El Paso 1984, no writ). We fail to see any distinction between failure to provide, furnish, or use and nonuse.

*Texas Tech Univ.*, 540 S.W.2d 297, 303 (Tex.1976) (Greenhill, C.J., concurring); *Jenkins*, 570 S.W.2d at 178.

Cases interpreting this provision in the medical context reflect a variety of situations deemed sufficient to state a claim, including the negligent handling of medical files and the negligent dispensing of drugs.[7] An equally large number of situations have been held insufficient to state a claim under the Texas Tort Claims Act, including allegations of negligence in the failure to read medical files and negligence in the failure to admit or transport patients for treatment after initial examination.[8]

■ As to appellants' allegations of "use" of personal property, Dr. Kalra's affidavit states that he followed the difficult-patient file when he evaluated Johnson. Attached to appellants' response to Southwestern's motion for summary judg-

7. *See, e.g., Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex.1983) (improperly reading and interpreting electrocardiogram graphs); *Overton Memorial Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (per curiam) (negligently providing bed without bed rails); *Texas Dep't of Mental Health & Mental Retardation v. Petty*, 817 S.W.2d 707, 712 (Tex.App.—Austin 1991, writ granted) (use or misuse of individualized treatment plans, mental status exams, evaluations, diagnoses, interdisciplinary team staffing reports, and progress notes); *University of Tex. Medical Branch v. York*, 808 S.W.2d 106, 109–10 (Tex.App.—Houston [1st Dist.] 1991, writ requested) (failure to record essential entries into medical chart causing misinterpretation of patient's condition); *Huckabay v. Irving Hosp. Found.*, 802 S.W.2d 758, 760–61 (Tex.App.—Dallas 1990, writ denied) (negligently pushing patient against x-ray apparatus); *Armendarez*, 781 S.W.2d at 305 (negligent use of vacuum extractor); *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915, 917 (Tex.App.—Corpus Christi 1989, no writ) (negligently dispensing a drug); *City of Houston v. Arney*, 680 S.W.2d 867, 874 (Tex. App.—San Antonio 1984, no writ) (negligent keeping of files, records, or other documentation and means of notifying patient of precancerous condition); *Green v. City of Dallas*, 665 S.W.2d 567, 569 (Tex.App.—Fort Worth 1984, no writ) (failure to properly use cardiac monitor, defibrillators, cardiac drugs, and breathing apparatus); *Jenkins v. State*, 570 S.W.2d 175, 177–78 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ) (failure to timely obtain and use medical records and failure to administer medication for epileptic seizures); *Garcia v. Memorial Hosp.*, 557 S.W.2d 859, 859–60 (Tex.Civ.App.—San Antonio 1977, no writ) (failure to have available vital components of necessary life-sustaining equipment); *Rodriguez v. Holmes*, 556 S.W.2d 125, 126–28 (Tex.Civ.App.—San Antonio 1977, no writ) (failure to provide adequate oxygen and adequate services for treatment of heart patients); *Mokry v. University of Tex. Health Science Ctr.*, 529 S.W.2d 802, 804 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (failure to provide means to prevent surgically-removed eye deposited in container by medical personnel from falling out and being lost down a drain).

8. *See, e.g., Estate of Banks v. Chambers Memorial Hosp. Auxiliary, Inc.*, 865 F.2d 696, 699 (5th Cir.1989) (refusal to admit choking patient after taking temperature); *Diaz v. Central Plains Regional Hosp.*, 802 F.2d 141, 145 (5th Cir.1986) (failure to admit and use hospital equipment); *Hale v. Sheikholeslam*, 724 F.2d 1205, 1209 (5th Cir.1984) (failure to exercise reasonable care in granting staff privileges, failure to request additional medical tests, failure to provide medication, failure to provide sterile environment); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974) (failure to provide adequate medical care and treatment); *Mitcham v. University of Tex. Medical Branch*, 818 S.W.2d 523, 525 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (failure to advise patient of risks allegedly resulting in negligent arteriogram process); *Harris v. Galveston County*, 799 S.W.2d 766, 767–68 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (negligent entrustment of county facilities and personal property); *Weeks v. Harris County Hosp. Dist.*, 785 S.W.2d 169, 170–72 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (failure to restrain mental patient); *Montoya v. John Peter Smith Hosp.*, 760 S.W.2d 361, 363 (Tex.App.—Fort Worth 1988, writ denied) (failure to use triage slip); *Bourne v. Nueces County Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex. App.—Corpus Christi 1988, writ denied) (failure to use building to confine schizophrenic patient); *Seiler v. Guadalupe Valley Hosp.*, 709 S.W.2d 37, 38–39 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (failure of hospital employees to read physician's chart notes); *Floyd v. Willacy County Hosp. Dist.*, 706 S.W.2d 731, 733 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (failure to use available drugs and equipment to render emergency medical care); *Velasquez v. Jamar*, 584 S.W.2d 729, 731–32 (Tex.Civ. App.—Tyler 1979, no writ) (negligently providing full anesthetic, failure to monitor fetal heart tones, negligently wrapping broken leg, and failure to have equipment for caesarian section on standby); *Brantley v. City of Dallas*, 545 S.W.2d 284, 285–86 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (refusal to provide emergency transportation after examination with sphygmomanometer and stethoscope); *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd) (negligence in transferring mental patient to nursing home).

ment are deposition excerpts of Dr. Litman, an expert psychiatrist in the field of suicidology, stating that Dr. Kalra failed to follow Dr. Puryear's policy manual and the difficult patient file by not obtaining a second opinion from a senior attending psychiatrist. A senior psychiatrist would have recognized the gravity of Johnson's suicide threats, whereas Dr. Kalra did not. If such an opinion was obtained, Dr. Litman felt that a brief hospitalization or reevaluation would have occurred that would have enabled Johnson to survive the incident.

Dr. Litman further stated that Dr. Kalra negligently failed to give Johnson's medication back when she asked for it after Dr. Kalra decided not to admit her. In Dr. Litman's opinion, Johnson would have survived the incident had her medications been returned to her.

■ As to appellants' allegations regarding the "condition" of personal property, appellants' response to Southwestern's motion for summary judgment included a deposition excerpt from Dr. Douglas Puryear stating that he prepared a handwritten document which was transcribed incorrectly in the preparation of Johnson's difficult-patient file. The typewritten document advised physicians to seek a second opinion "ASAP." Dr. Puryear stated that the difficult-patient file should have advised physicians: "If you're convinced she's highly dangerous, get a second opinion." Dr. Litman's affidavit states that Dr. Puryear's negligence was "borderline" for failing to include a treatment plan in Johnson's difficult-patient file. Dr. Litman did not say that the defective difficult-patient file itself was a cause of Johnson's death.

We find that the trial court correctly granted summary judgment on appellants' claim involving the "condition" of property for purposes of the Texas Tort Claims Act. However, Southwestern failed to establish its right to judgment as a matter of law on appellants' claims involving the "use" of nondefective property by Southwestern's employees acting within their scope of employment so as to cause injury. Appellants' fifth point is sustained.

## DEATH CAUSED BY USE OF TANGIBLE PERSONAL PROPERTY

■ In their sixth point, appellants assert that the trial court erred in granting summary judgment in favor of Southwestern on the ground that appellants failed to establish a causal link between the use of tangible personal property and the death of Johnson. Dr. Litman's deposition states that Johnson would have survived but for the negligence of Dr. Kalra, a physician provided by Southwestern for Parkland's psychiatric emergency room, and other members of Parkland's staff. Dr. Litman attributed Johnson's death to the failure to return her medication and to Dr. Kalra's failure to follow Dr. Puryear's policy manual and Johnson's difficult-patient file by not obtaining a second opinion from a senior psychiatrist.

Southwestern refers us to *Exxon Corp. v. Brecheen*, which adopts the Restatement (Second) of Torts § 455[9] to impose liability when negligent conduct produces a condition of insanity resulting in suicide. *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 524 (Tex.1975). Southwestern argues that under *Brecheen* it should not be liable for Johnson's injuries unless appellants prove that Southwestern caused Johnson's mental instability. Southwestern urges that *Brecheen* provides the appropriate articulation of the legal duty in suicide cases and that general medical negligence principles should not apply. We disagree. *Brecheen* is inapplicable here because it does not apply to the alleged negligence of a mental-

9. RESTATEMENT (SECOND) OF TORTS § 455 (1965) provides:

If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

health-care provider in treating a mentally ill patient.

Appellants' sixth point is sustained. Appellants' first and fourth points generally complaining of the granting of summary judgment in favor of Dr. Kalra and Southwestern also are sustained.

## INSTRUCTED VERDICT STANDARD OF REVIEW

■ Appellants' next two points assert that the trial court erred by granting an instructed verdict in favor of Parkland and Kassen. In reviewing an instructed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. We determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 712 (Tex.App.—Dallas 1989, writ denied).

■ An instructed verdict is proper if (1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence proves conclusively the truth of fact propositions that, under the substantive law, establishes the right of the movant, or negates the right of his opponent, to judgment; or (3) the evidence is insufficient to raise a fact issue as to one or more fact propositions that must be established for the opponent to be entitled to judgment. *Fort Worth State Sch. v. Jones*, 756 S.W.2d 445, 446 (Tex.App.—Fort Worth 1988, no writ). An instructed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *C & C Partners*, 783 S.W.2d at 712.

## OFFICIAL IMMUNITY OF LISA KASSEN, R.N.

■ In their eighth point, appellants contend that the trial court erred in granting Kassen's motion for directed verdict on the ground that she is entitled to official immunity. At trial, appellants offered the testimony of two expert witnesses. Dona Warner, R.N., testified that after reviewing the medical records, depositions, and other documents in this case, she concluded that Kassen's actions were substandard in that Kassen should have intervened after Johnson stated a specific plan to commit suicide, that Kassen failed to follow the nursing chain of command with respect to the retention of Johnson's medication, and that Kassen inappropriately retained Johnson's medication.

Dr. Litman testified by deposition that Parkland's nurses were grossly negligent in failing to return the medication and for engaging in a "power play" with Johnson. Dr. Litman also stated that Kassen should have sought the advice of a nursing supervisor or a doctor when Johnson threatened to throw herself in front of a car if her medicine was not returned. Dr. Litman concluded that if the medications had been returned, Johnson would have survived. In addition to this expert testimony, Robert Knowles, R.N., said that it was below the standard of care for a nurse not to intervene when a patient threatens suicide with a specific plan for carrying out the threat.

An instructed verdict as to Kassen was proper if the evidence established as a matter of law that Kassen occupied a position of quasi-judicial status and acted in good faith within her authority as a quasi-judicial employee. *See Armendarez*, 781 S.W.2d at 305. Here, Kassen's actions were not quasi-judicial in nature. The handling of Johnson's suicide threats and her requests for the return of her medication does not involve actions involving decision-making affecting the government. The evidence does not establish that Kassen engaged in duties uniquely different from a nurse employed by the private sector.

■ Generally, nurses have few discretionary duties and usually perform ministerial functions under the supervision and orders of their superiors. *Estate of Burks v. Ross*, 438 F.2d 230, 235 (6th Cir.1971). A government-employed nurse engages in the same endeavors as a nurse in private practice and, therefore, engages in ministerial

acts for purposes of official immunity. *LeRose v. City of Zion/Police Dep't*, 696 F.Supp. 1222, 1230 (N.D.Ill.1988) (citing *Watson v. Saint Anne's Hosp.*, 68 Ill. App.3d 1048, 25 Ill.Dec. 411, 415–16, 386 N.E.2d 885, 889–90 (1979)).

We hold that Kassen did not establish her entitlement to application of the official-immunity doctrine as a matter of law. Since the trial court erred in granting Kassen's motion for directed verdict, appellants' eighth point is sustained.

## SOVEREIGN IMMUNITY OF PARKLAND

▇ In their ninth point, appellants contend that the trial court erred in granting Parkland's motion for directed verdict on the ground of sovereign immunity.[10] Applying the criteria set out in our previous discussion of section 101.021 of the Texas Civil Practice & Remedies Code, we find that Parkland failed to establish its right to judgment as a matter of law on appellants' claims involving the "use" of nondefective property by Southwestern's employees acting within their scope of employment so as to cause injury. Knowles testified that a Parkland employee confiscated Johnson's medication. Parkland employees participated in the decision not to return Johnson's medication. Dr. Litman, appellants' expert witness, testified that the failure to return Johnson's medication was negligent and caused Johnson's death.

▇ Parkland also moved for instructed verdict under a provision of the Texas Tort Claims Act that provides that the Act does not apply to a claim arising from the failure to provide or the method of providing police or fire protection. TEX.CIV.PRAC. & REM.CODE ANN. § 101.055(3) (Vernon Supp. 1992). Here, appellants' claims do not arise from a failure to provide or the method of providing police or fire protection. Johnson sought treatment as a *voluntary* patient. According to the trial testimony, any police involvement in an order for protective custody or a mental-health warrant would require *involuntary* admission to a

hospital. Appellants' claims alleging negligence in Parkland's failure to admit and hold Johnson for evaluation at Parkland do not allege a failure to provide police protection, but rather a failure to provide standard medical care entailing the use of tangible personal property so as to invoke the limited waiver of Parkland's sovereign immunity to suit. Accordingly, we sustain appellants' ninth point.

The summary judgment granted in favor of University of Texas Southwestern Medical Center at Dallas and Gurjeet S. Kalra, M.D., is reversed, and the directed verdict granted in favor of Lisa Kassen, R.N. and Dallas County Hospital District d/b/a Parkland Hospital is reversed. This cause is remanded to the trial court for further proceedings in accordance with this opinion.

CARVER, Justice, Assigned dissenting.

I respectfully disagree with my colleagues and dissent to their opinion and judgment reversing the trial court's summary judgment as to some defendants and its instructed verdict as to the remaining defendants.

This dissent does not rest upon factual premises, and I do not dispute, but rely upon, the facts set out in the opinion of my colleagues.

As the majority opinion states, Pennie Johnson had been a chronic mental patient for ten years. Repeatedly, she had threatened suicide, seeking to compel medical professionals to disregard their medical judgments and to obey Pennie's contrary personal wishes. On February 14, 1988, Pennie yet again threatened suicide when she was refused admission to the hospital and her abused prescription medication was taken from her possession. About thirty minutes after this last threat, Pennie stepped into traffic on an interstate highway, was hit by a truck, and died.

No medical professional seen by Pennie had ever submitted to her threats. Pennie had not pursued her threats beyond verbal-

---

**10.** It is undisputed that Parkland is a "governmental unit" within the meaning of the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(2) (Vernon Supp.1992).

izing them; consequently, *empty* threats were the only "foreseeable" types of threats from her. The record is silent as to events or expressions involving Pennie in the time between when she left Parkland Hospital and when she was struck by the truck, and it is only speculation that Pennie's death was anything but an accidental misjudgment by a pedestrian as to the risk posed by an oncoming vehicle.

While no direct precedent has been found by my brothers, or counsel, or me, there is a line of cases that persuades me to conclude that the trial court correctly concluded that the claim asserted is patently without merit and subject to summary, or directed, disposition.

In *Weeks v. Harris County Hosp. Dist.*, 785 S.W.2d 169 (Tex.App.—Houston [14th Dist.] 1990, writ denied), a court warrant ordered a person to be detained as an in-patient in a mental health facility. The person was brought to the defendant hospital, which had no such facilities. The person was neither registered nor admitted but was waiting to be transported to another hospital with the required facilities when she left the hospital, went home, and killed herself with a gun. The husband's and children's suit against the hospital was concluded by summary judgment on the grounds that the hospital was immune as a governmental entity under the Texas Constitution[1] and that such immunity was not waived under the Texas Tort Claims Act.[2] In short, *Weeks* holds that the hospital has no duty prior to accepting a patient and that, after admission, the "injury must be foreseeable" and the hospital's "conduct must be the proximate cause." *Weeks* also holds "that hospital officials were neither negligent nor could they have reasonably anticipated Mrs. Weeks' self-destructive acts."

In *Williams v. Sun Valley Hosp.*, 723 S.W.2d 783 (Tex.App.—El Paso 1987, writ ref'd n.r.e.), an admitted mental patient escaped and jumped in front of a car which killed him. The driver sued the hospital for negligence in failing to control a mental patient. The court rejected the existence of a legal "duty to control" upon counselling professions because "human behavior is simply too unpredictable ... to so greatly expand the scope of the therapist liability." *Williams*, 723 S.W.2d at 786.

In *Harris Hosp. v. Pope*, 520 S.W.2d 813 (Tex.App.—Fort Worth 1975, writ ref'd n.r.e.), an admitted patient crawled onto an outside building ledge and fell or jumped to her injury. Negligence was asserted as a failure to keep a watch on the patient. Judgment for the Popes was reversed holding that the trial court erred in failing to grant both directed verdict and judgment N.O.V. The opinion relies upon and quotes *Bornmann v. Great Southwest Hosp., Inc.*, 453 F.2d 616 (5th Cir.1971), wherein the court stated:

> Simply stated, a hospital is under a duty to exercise reasonable care to safeguard the patient from any known or reasonable apprehensible danger from himself and to exercise such reasonable care for his safety as his mental and physical condition, if known, may require. Liability exists only if the suicide proximately results from the negligence of the hospital or its employees. *The most important single factor in determining the liability of a hospital for failing to prevent the suicide of a patient is whether the hospital authorities in the circumstances, could reasonably have anticipated that the patient might harm himself.*

*Id.* at 621 (emphasis added).

These authorities compel me to question whether there is any legal duty imposed upon the hospital and its staff prior to admission of a person as a patient. If such a duty does exist, the risk from breach of that duty must, under these authorities, be *foreseeable.* If the threat of suicide has been made for more than ten years, emptily, can one more threat, under these authorities, make actual suicide *reasonably* foreseeable this time? I am compelled to conclude that after ten years of threats of

---

1. TEX. CONST. art. 1, § 17.

2. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(a) (Vernon 1986).

suicide, the act of suicide cannot be said to have been reasonably foreseeable.

Likewise, these authorities compel me to question whether the hospital's or the staff's conduct of refusing admission and access to abused prescription drugs can be said to be the proximate cause of Pennie's injury. Pennie's empty threats for ten years would only support nonsuicide. While the gun in one case above, or crawling out on a window ledge in another case, might equate to suicide, a pedestrian-vehicle collision would support equally other inconsistent conclusions; consequently, it supports none. *See Litton Indus. Prod., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984); *Texas Sling Co. v. Emanuel,* 431 S.W.2d 538, 541 (Tex.1968). I am compelled to conclude that there can be no proof showing the conduct of the hospital or staff was the "proximate cause" of any injuries to Pennie.

Pennie Johnson's parents assert damage claims against the professionals involved on the ground that they should have allowed Pennie to intimidate them into acting contrary to their medical opinions; that is, the intended victim of intimidation by threat of suicide must either accept being a victim or pay damages when the threat may merely seem (but cannot be known) to have been carried out. I would hold that threats of suicide cannot enslave the intended victim to either submission or damages—especially threats that have been "empty" for ten years. I would affirm the trial court's conclusion that the asserted claim is patently without merit.