**Alicia SALCEDO, et al., Appellants,**

v.

**Jose Angel DIAZ, M.D., et al., Appellees.**

**No. 08–82–00024–CV.**

Court of Appeals of Texas,
El Paso.

Jan. 12, 1983.

Rehearing Denied Feb. 16, 1983.

52

Richard T. Marshall, Richard T. Marshall & Assoc., P.C., David R. Rosado, El Paso, for appellants.

Howell Cobb, III, L. Randall Lee, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, Eliot G. Shapleigh, John B. Luscombe, Jr., Peticolas, Luscombe & Stephens, El Paso, for appellees.

Before PRESLAR, Chief Justice, and OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

These Appellants, being the surviving widow and minor children of Everardo Salcedo, filed suit against Jose Angel Diaz and El Paso Hospital District under the Texas Tort Claims Act seeking to recover damages for the pain and suffering and wrongful death of their husband and father. The trial court sustained special exceptions to their pleadings and dismissed the case. We affirm in part and reverse and remand in part.

On February 28, 1978, Everardo Salcedo went to the Emergency Room of R.E. Thomason General Hospital with complaints of chest pain which radiated into his arms. Dr. Diaz, the emergency room physician, examined him and diagnosed his condition as anxiety. The doctor interpreted an electrocardiogram as being normal, when it actually showed the patient was sustaining a myocardial infarction. The patient was released, but was returned several hours later and was pronounced dead. The cause of death was a myocardial infarction.

■ The first point of error contends the trial court erred in sustaining Dr. Diaz' special exception which asserted that there was a failure to comply with the sixty-day notice provision of Section 4.01 of Article 4590i, Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1982). It appears from the briefs that Dr. Diaz left the State of Texas in July, 1978, and did not return until June, 1981. Appellants contend they attempted to locate him so as to give him notice, but were unable to do so. Apparently, no actual notice was given as required by the statute. But, on a special exception hearing, the issue is not whether there is any proof of notice but only whether there is pleading of proof of notice. Paragraph XI of Plaintiffs' fourth amended original petition alleges:

Plaintiffs have fully satisfied the presuit requirements of Section 4.01(a) of the Medical Liability and Insurance Improvement Act of 1977 of the State of Texas.

■ Texas does not have a "speaking demurrer" which raises issues of fact. *Travelers Indemnity Company v. Holt Machinery Company,* 554 S.W.2d 12 (Tex.Civ.App. —El Paso 1977, no writ). If the defendant must rely on extrinsic facts outside the pleading, he must raise the point by a plea in abatement or in bar, or by motion for summary judgment, but not by special exception. *Ragsdale v. Ragsdale,* 520 S.W.2d 839 (Tex.Civ.App.—Fort Worth 1975, no writ); 2 McDonald, Texas Civil Practice, Section 7.22 (1982).

The pleading of notice was sufficient and it was error to sustain an exception to this allegation. Point of Error No. One is sustained.

■ The next point of error contends the trial court erred in sustaining Dr. Diaz' special exception asserting that the doctor was immune from suit under Section 15 of Article 6252–19, Tex.Rev.Civ.Stat.Ann. (Vernon 1970), because he was a governmental employee performing administrative discretionary functions.

Section 15 of the Texas Tort Claims Act, Article 6252–19, Tex.Rev.Civ.Stat.Ann., does provide for "individual immunity of public officers, agents or employees of government from tort claims for damages * * * to the extent and degree that such persons presently are immunized." The court in *Baker v. Story,* 621 S.W.2d 639 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.), discussed at length the doctrine of "official immunity" in Texas. The opinion by Chief Justice Cadena says:

[T]he Texas courts have not granted immunity to all public servants. The Texas courts, in granting immunity, have distinguished between judicial officers, quasi-judicial personnel and ministerial functionaries.

\* \* \* \* \* \*

The distinction between "quasi-judicial" and "ministerial" duties is not only a finespun distinction; it is, for practical purposes, unworkable. It is said that "quasi-judicial" acts are "discretionary" in character, requiring personal deliberation, decision and judgment, while "ministerial" acts require only obedience to orders, or the performance of a duty as to which the actor is left no choice of his own. "It seems almost impossible to draw any clear and definite line, since the distinction, if it exists, can be at most one of degree. 'It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.'" W. Prosser, *supra* at p. 990.

In that opinion, the court concluded that the trial court erred in sustaining a motion

for instructed verdict because the evidence did not establish as a matter of law that the duties of Dr. Story were of a nature which must be classified as "quasi-judicial." The court cited cases from other jurisdictions which hold that the negligent acts of a medical doctor employed by the state do not involve matters of "governmental" discretion and that alleged malpractice of a doctor falls outside the immunity granted state employees in the performance of discretionary acts.

We need not decide if those holdings from other states would be followed in Texas. The issue as to whether a doctor is performing a quasi-judicial function or only a ministerial function is one to be decided based upon the proof in the case. The pleadings do not admit that he was performing a quasi-judicial function, and the issue can only be decided upon proper summary judgment proof or a trial on the merits. It cannot be determined by a review of the pleadings alone. The court erred in sustaining the special exception. Point of Error No. Two is sustained.

■ The last point of error contends the trial court erred in sustaining the special exception of El Paso Hospital District. The plaintiffs' pleadings alleged negligence upon the part of the hospital because of misuse of certain equipment based upon a total failure to use such equipment. The allegations assert a failure to insert intravenous therapy equipment, a failure to use oxygen therapy equipment and a failure to use cardiac monitoring equipment and an improper reading of an electrocardiogram.

Section 3 of the Texas Tort Claims Act, Article 6252–19, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982), provides that:

Each unit of government in the state shall be liable for money damages for * * death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.

There are no allegations that any of the hospital equipment was defective, but only a failure to use that which was available and that this constituted a nonuse of tangible personal property.

It appears that immunity has been waived for use of defective equipment, but not for nonuse of nondefective equipment. In *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976), the court held that it was error to sustain a plea in abatement where there was an "affirmative allegation of furnishing defective equipment to Lowe." Chief Justice Greenhill in a concurring opinion, with two Justices joining, concluded that the legislature did not intend to waive immunity where the injury grew out of the nonuse of a nondefective piece of equipment which was furnished.

In *Beggs v. Texas Department of Mental Health and Mental Retardation,* 496 S.W.2d 252 (Tex.Civ.App.—San Antonio 1973, writ ref'd), Chief Justice Barrow writing for the court noted that "use" means "to put or bring into action or service; to employ for or apply to a given purpose." He concluded that an error of judgment cannot reasonably be said to involve the negligent use of tangible property, real or personal.

The question of a failure to render service was before the court in *Brantley v. City of Dallas,* 545 S.W.2d 284 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.), and the court concluded that there was no liability where there was no allegation of defective or deficient equipment.

A more recent case which reached the same results is *Velasquez v. Jamar,* 584 S.W.2d 729 (Tex.Civ.App.—Tyler 1979, no writ). In upholding the trial court's action in sustaining a special exception on grounds of governmental immunity, the court noted that there was no allegation of any tangible property being either deficient or inappropriate for the purpose for which it was used. We conclude that the pleadings do not state a cause of action against the hospital and Point of Error No. Three is overruled.

The judgment of the trial court dismissing the suit against El Paso Hospital Dis-

trict is affirmed, and that part of the case is severed from the suit against Dr. Diaz. That part of the judgment dismissing the suit against Jose Angel Diaz is reversed and remanded to the trial court.