**James A. GLEASON, Plaintiff,**

v.

**Dr. David E. BEESINGER, et al., Defendants.**

**Civ. A. No. H–86–4480.**

United States District Court, S.D. Texas, Houston Division.

Jan. 30, 1989.

Richard L. Arnold, Robins, Zelle, Larson & Kaplan, Dallas, Tex., and David B. Dickinson, Houston, Tex., for plaintiff.

J. Mark Holbrook, Asst. Atty. Gen., Austin, Tex., Gordon M. Carver, III, Dunn, Kacal, Adams, Livingston, Pappas & Law, and Dan Ryan, Ryan & Marshall, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Dr. C.B. Goswick, a physician employed by Texas A & M University, asserts by motion to dismiss the defense of "quasi-judicial" immunity from suit for alleged medical malpractice. For the reasons discussed below, the Court DENIES the doctor's motion.

### I. FACTS

In October of 1984, while James Gleason was attending Texas A & M, he was involved in a bicycle/car accident and suffered a compound fracture in his lower left leg. Gleason was initially treated at St. Joseph's Hospital in Bryan, Texas, by Dr. Lawrence Coleman and Dr. David Beesing-

er, who operated on and treated his leg. Gleason was later transferred to the A.P. Beutel Health Center on the Texas A & M campus. The Health Center provides care to students attending Texas A & M. Gleason's treatment at the Health Center was undertaken by Dr. C.B. Goswick, a physician licensed to practice in Texas and the Director of Student Health Services at Texas A & M in College Station.

Gleason's medical malpractice action, founded on diversity jurisdiction, alleges damages as a result of improper care rendered by Drs. Goswick, Coleman, and Beesinger, the Health Center, and Texas A & M. Gleason contends that Dr. Goswick failed to take proper preventative measures against infection, failed to properly diagnose the developing infection in his leg, failed to provide proper treatment for the infection once it had developed, and failed to timely refer Gleason to a specialist who could properly treat his condition.

Texas A & M and the Health Center were dismissed for lack of subject matter jurisdiction because state agencies are not citizens for purposes of diversity jurisdiction. Dr. Beesinger was dismissed by agreement of the parties. Dr. Goswick now moves to dismiss under the theory that he is immune from liability under the doctrine of "quasi-judicial" or "official" immunity. Dr. Goswick's motion must be treated as a motion for summary judgment since he supports it by affidavit and deposition testimony properly reserved for a summary judgment motion under Fed.R.Civ.P. 56.

### II. GOVERNING LAW

The issue of a treating physician's quasi-judicial immunity in a medical malpractice action is one of first impression under Texas law. Since neither the Texas Supreme Court nor other Texas courts have ruled on the issue, this Court must formulate a rule of law independently. *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1091–92 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985); *Stool v. J.C. Penney Co.,* 404 F.2d 562, 563 (5th Cir.1968). In doing so, the

Court may consider all available legal sources. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397–98 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Seafirst Commercial Corp. v. U.S. Fidelity & Guaranty Co.*, 780 F.2d 1290, 1295 (5th Cir.1986). In the absence of controlling precedent, the Court must decide the issue in accord with how it believes the Texas Supreme Court would decide the issue. *Green v. Amerada–Hess Corp.*, 612 F.2d 212, 214 (5th Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). In deference to the State's highest court, this Court explains the legal analysis on the issue with greater elaboration than normally befits decisions of a district court.[1]

### A. *Quasi–Judicial Immunity in Texas*

"Quasi-judicial" or "official" immunity is a form of common law immunity afforded to public officers and employees for tortious acts done within the course and scope of their duties. *Richardson v. Thompson*, 390 S.W.2d 830, 834 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). The immunity applies only to "discretionary" acts; officials are subject to suit for "ministerial acts" to the same extent as any other private citizen. *Torres v. Owens*, 380 S.W.2d 30, 33–34 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 645 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). The distinction between discretionary and ministerial functions thus becomes critical in determining the applicability of the immunity in a particular case.

This distinction is far from settled by Texas courts, however. Generally, discretionary acts are those requiring personal deliberation, decision and judgment, while ministerial acts are those requiring obedience to orders or the performance of a duty in which the actor is left no choice of his own. *Baker v. Story*, 621 S.W.2d at 645; *Austin v. Hale*, 711 S.W.2d 64, 67 (Tex. App.—Waco 1986, no writ). Application of these broad definitions has proved difficult, however, and case law dealing with these concepts provides little guidance to courts when fresh facts are presented.

For example, in *Baker v. Story*, the court observed that the distinction between discretionary and ministerial functions is "not only a fine-spun distinction; it is, for practical purposes, unworkable." The court cogently noted that:

> It seems almost impossible to draw any clear and definite line, since the distinction, if it exists, can be at most one of degree. 'It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.'

*Baker*, 621 S.W.2d at 645 (citing W. Prosser, *The Law of Torts* § 132, p. 990 (4th ed. 1971)).

In analyzing the discretionary/ministerial test, the *Baker* court relied on *Comley v. Emanuel Lutheran Charity Board*, 35 Or.App. 465, 582 P.2d 443 (1978). The *Comley* court, in a lengthy discussion of the "elusive term 'discretionary' and its opposite 'ministerial,'" concluded that whether certain conduct is discretionary should be "guided by the purpose of the immunity doctrine." *Id.* 582 P.2d at 449. The principle underlying the discretionary act exception to liability is that "it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or a jury." *Id.* This exception acted "to preserve the separation-of-powers principle upon which our government was founded." *Id.* at 450. The court characterized the discretionary/ministerial acts distinction as a distinction between policy-making action and implementative action. Policy-making actions are decisions "which require governmental judgment and judicial abstention." *Id.*

---

1. Although the Texas legislature has not spoken directly to this issue, the Texas Education Code §§ 59.01 *et seq.* (Vernon 1987), reflects legislative recognition of the liability of state-employed physicians for malpractice. This statute allows state universities to establish "Medical Professional Liability Funds" as separate self-insurance funds to pay judgments and settlements for staff physicians in medical malpractice actions.

Implementative actions, on the other hand, are decisions "which do not involve the balancing of public considerations and are susceptible to judicial examination." *Id.*

> Acts of implementation ... have no quality of political or governmental judgment about them which would cause the judiciary to abstain from applying the rules of due care just as it does when such acts are performed in a non-governmental setting.

*Id.* In applying these principles to medical malpractice actions, the Oregon court concluded that the negligent acts of a medical doctor employed by the state did not involve matters of governmental discretion. The alleged malpractice of a state-employed doctor therefore fell outside the immunity granted to state employees in the performance of discretionary acts.

In *Baker* the court of civil appeals reversed an instructed verdict in favor of a physician employed by the University of Texas Medical School in San Antonio because the evidence did not establish as a matter of law the nature of his duties, and thus that they were "quasi-judicial" in nature. 621 S.W.2d at 645. Similarly, in *Salcedo v. Diaz*, 647 S.W.2d 51, 53–54 (Tex. App.—El Paso), *rev'd on other grounds*, 659 S.W.2d 30 (Tex.1983), the court held that the trial court should not have sustained a special exception asserting that the physician was immune from suit as a governmental employee performing discretionary functions because the pleadings did not demonstrate that the duties of a physician employed by the state were quasi-judicial. 647 S.W.2d at 54.

In both *Baker* and *Salcedo* the courts discussed official immunity for state-employed treating physicians, but never decided the issue. In both cases the courts reversed and remanded on procedural grounds. *Baker*, 621 S.W.2d at 646; *Salcedo*, 647 S.W.2d at 54. In the present case, by contrast, the summary judgment facts are established to a degree sufficient to permit this Court to address the underlying legal issue of the applicability of official immunity to a treating physician.

While no Texas court has directly decided whether a state-employed physician has official immunity, Texas decisions dealing with official immunity of other state employees are instructive. The duties of jailers and sheriffs in receiving and caring for prisoners are held to be ministerial and thus not protected. *Browning v. Graves*, 152 S.W.2d 515, 519 (Tex.Civ.App.—Fort Worth 1941, writ ref'd) (negligent sheriff liable for fatal injuries to prisoner). Police officers' duties have been classified as ministerial when negligence occurs in the operation of a police vehicle responding to a call. *Eubanks v. Wood*, 304 S.W.2d 567, 570 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.). On the other hand, employees of the Board of Navigation and Canal Commissioners acted in a discretionary manner and were immune from liability when making a contract for dredging and letting it to a particular contractor. *Torres v. Owens*, 380 S.W.2d 30, 34 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). Similarly, a state employee responsible for licensing day care facilities was held to perform discretionary duties. *Augustine by Augustine v. Nusom*, 671 S.W.2d 112, 115 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

In *Christilles v. Southwest Texas State University*, 639 S.W.2d 38, 43 (Tex.App.—Austin 1982, writ ref'd n.r.e.), the court held that decisions made by a professor in directing a university theatre production were non-discretionary. In doing so, the court advanced a different way of distinguishing between discretionary and non-discretionary activities. The *Christilles* test, which is similar to the *Comley* approach, distinguishes between governmental and occupational discretion. Exercises of governmental discretion, like "discretionary functions," involve policy decisions, while exercises of occupational discretion, like "ministerial functions," involve carrying out "the specifics of a particular policy." *Id.* at 42. The court explained the governmental/occupational discretion distinction through the following example:

> The physician at the veterans' hospital exercises professional discretion in deciding whether or not to operate, but he

combines professional discretion with governmental discretion when he decides that budgetary restrictions require non-use of an especially expensive treatment in absence of specified conditions.

*Id.* (quoting 3 Davis, *Administrative Law Treatise* § 25.08, at 403–4 (2d Ed.1978 & Supp.1982)). Applying this analysis, the *Christilles* court held that a university professor's decision to use a real drinking glass in a theater production, instead of a safer substitute, was an exercise of "professional" or "occupational" discretion and was not an exercise of "governmental" discretion. *Id.* at 43.

### B. *Quasi–Judicial Immunity in Other Jurisdictions*

Because of the lack of clear standards provided by the discretionary/ministerial test, courts in many jurisdictions have criticized it or abandoned it *sub silentio* in favor of what is in fact a functional analysis that looks to an official's duties instead of his title. *See, e.g., Comley v. Emanuel Lutheran Charity Board,* 35 Or.App. 465, 582 P.2d 443 (1978) (discussed *supra* at 159–160). Although in the somewhat different context of absolute immunity, the Supreme Court recently reiterated its preference for such an analysis. In *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Court stated:

In determining the propriety of shielding an official from suit under the circumstances, this Court has long favored a *"functional inquiry*—immunity attaches to particular official functions, not to particular offices. *See, e.g., Forrester v. White,* [484] U.S. [219], [——] [108 S.Ct. 538, 542, 98 L.Ed.2d 555] (1988); *Harlow v. Fitzgerald,* 457 U.S. 800, 811–812 [102 S.Ct. 2727, 2734–35, 73 L.Ed.2d 396] (1982); *Doe McMillan,* 412 U.S. 306, 319–320 [93 S.Ct. 2018, 2028–29, 36 L.Ed.2d 912] (1973); *Barr v. Matteo,* 360 U.S. 564, 572–573 [79 S.Ct. 1335, 1340–41, 3 L.Ed.2d 1434] (1959). The adoption of this functional approach reflects the Court's concern, expressed in *Doe,* that federal officials be granted absolute immunity only insofar as the benefits of immunity outweigh the cost. Because

the benefits of official immunity lie principally in avoiding corruption of governmental functions, the inquiry into whether absolute immunity is warranted in a particular context depends on the degree to which the official function would suffer under the threat of prospective litigation.

108 S.Ct. at 583, n. 3 (emphasis added). The Court observed that the threat of liability cannot detrimentally inhibit conduct that is not the product of independent judgment. *Id.* at 584. Virtually all official acts involve some degree of choice, and may "yet be largely unaffected by the prospect of tort liability, making the provision of absolute immunity unnecessary and unwise." *Id.* at 585.

The same trend is evident in decisions from the federal circuit courts. In *Costley v. United States,* 181 F.2d 723 (5th Cir. 1950), a suit under the Federal Tort Claims Act, the court held that the United States was not exercising a discretionary function when government hospital employees negligently injected a harmful substance into a patient. Since the hospital had already exercised its discretion by admitting the patient, once medical treatment had begun the hospital was under a duty to attend and treat her. "Hospital authorities no longer had any discretion to exercise with regard to whether [the patient] was to receive careful or negligent treatment. A duty arose at this point to treat her with the same care, skill, diligence, and ability, that would be owing by a private person or corporation under the same or similar circumstances." *Id.* at 725.

*Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977), held that an air force physician's treatment of a patient did not involve governmental discretion, and the physician was therefore not entitled to official immunity. In reaching this conclusion, the court noted that it had "twice held the discretionary function exception does not exempt the government from liability for negligent medical care." *Id.* at 738 (citing *Griggs v. United States,* 178 F.2d 1 (10th Cir.1949), *rev'd on other grounds,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (discretionary

function exception did not apply where army officer died due to the negligent acts of army medical personnel); and *United States v. Gray,* 199 F.2d 239 (10th Cir.1952) (discretionary function exception did not bar suit by patient who jumped out of an army hospital window after the removal of guard assigned to the patient's room)). The *Jackson* court held that "it is clear defendant's duty in treating plaintiff was non-discretionary. He did not engage in planning or policy-making, but merely attempted to carry out the ministerial duty of caring for plaintiff in a reasonable manner as he was obliged to do as an air force physician." 557 F.2d at 738.

However, the *Jackson* court concluded that the determination whether a physician's duties were ministerial did not end the analysis of whether he was entitled to official immunity. The court read *Doe v. McMillan,* 412 U.S. 306, 320, 93 S.Ct. 2018, 2028–29, 36 L.Ed.2d 912 (1973), as "requiring us to balance the consideration of harm to the individual citizen with the threat to effective government in the context of this case before granting or refusing to grant defendant official immunity." 557 F.2d at 739. The court thus proposed a two-step process for analyzing quasi-judicial immunity for doctors: a functional test to determine whether discretionary acts were involved and a balancing test to determine whether governmental interests require immunity for the acts at issue.

In applying the balancing test, the *Jackson* court concluded that the burden to effective government did not outweigh the dangers to individual citizens of severe and permanent injuries by negligent military physicians. "Effective government would not suffer excessively if monetary compensation were permitted because the alleged wrongful conduct does not involve politically sensitive judgments or discretionary governmental acts." *Id.* The court therefore held that the defendant air force physician was not entitled to immunity. *Id.* at 739–40. *See also Chavez v. Singer,* 698 F.2d

420, 422 (10th Cir.1983); *Davis v. Knud–Hansen Memorial Hospital,* 635 F.2d 179 (3d Cir.1980).

### C. The Test for Quasi–Judicial Immunity of State–Employed Doctors in Texas

◼ After considering the authorities discussed above and the policies underlying official immunity, this Court finds persuasive the two-step analysis advocated by the United States Supreme Court in *Doe v. McMillan* and followed by a number of the circuit courts.[2] This analysis requires application of both a functional test and a balancing test. The functional test applies a case-specific discretionary versus ministerial function analysis. The balancing test weighs the harm to the individual citizen against the threat to effective government.

Discretionary functions of physicians are limited to policy-making decisions such as whether a patient is eligible for treatment and whether facilities are available to treat a patient. *See Costley v. United States,* 181 F.2d 723, 724–26 (5th Cir.1950); *Henderson v. Bluemink,* 511 F.2d 399, 402–03 (D.C.Cir.1974). In treating a patient, on the other hand, ministerial functions are involved because a physician exercises medical, not governmental judgment. In rare situations, medical and governmental judgment may be combined. For example, in *Christilles,* 639 S.W.2d at 42, the court observed that medical and governmental judgment may be combined when a doctor at a government hospital decides that budgetary restrictions do not permit the use of an especially expensive treatment in certain circumstances. Since the present case does not involve such combined judgment, it is not appropriate for the Court to address how to analyze such a case under the two-prong test.

The Court concludes that prior Texas case law and the policies underlying quasi-judicial immunity require a finding under the functional test that a state-employed

---

2. *Jackson v. Kelly,* 557 F.2d 735, 739 (10th Cir. 1977); *Smith v. Losee,* 485 F.2d 334, 343 (10th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974); *Chavez v. Singer,* 698 F.2d 420, 422 (10th Cir.1983); *Davis v. Knud–Hansen Memorial Hospital,* 635 F.2d 179, 186 (3d Cir.1980); *Henderson v. Bluemink,* 511 F.2d 399, 401 (D.C.Cir.1974).

physician should not be shielded for his negligent acts in providing medical care where only ministerial duties were performed. Medical judgment, not governmental judgment, is involved when a physician has undertaken treatment of a patient. The physician then has a duty to provide treatment with the same care, skill and diligence that would be owing by a private physician under the same or similar circumstances.

The Court also concludes that in a medical malpractice case such as the present one, where acts of a medical nature and not policy decisions are involved, the balancing test weighs in favor of denying quasi-judicial immunity to state-employed physicians. The need to protect individual citizens from severe and permanent injuries outweighs the need to immunize the government-employed physician in such a case.

### III. DR. GOSWICK'S CLAIM OF IMMUNITY

Dr. Goswick's summary judgment proof defeats his claim of official immunity under both prongs of the two-part analysis adopted by the Court. Under the functional test, official immunity will be afforded to Dr. Goswick only if the facts show his conduct to be discretionary. Dr. Goswick's affidavit in support of his motion for summary judgment states that he provided medical treatment to Gleason for about four months after Gleason was transferred to the A.P. Beutel Health Center for medical treatment. "I would see Mr. Gleason on rounds and provide whatever care I deemed appropriate in following the course of his treatment." (Affidavit of Dr. C.B. Goswick, Jr. at p. 2). Nothing in Dr. Goswick's affidavit indicates that he made any policy decisions with regard to Gleason's treatment. The affidavit states that his only duties toward Gleason were to provide treatment "in conformance with the good standards of medical care." Nor does Dr. Goswick's deposition, or the Deposition of Dr. Walter Finnegan submitted in support of Dr. Goswick's motion for summary judgment, evidence that Dr. Goswick was required to make policy decisions about the treatment to be provided to Glea-

son at the A.P. Beutel Health Center. (*See* Goswick Deposition at 6–7, 65; Finnegan Deposition at 201–03, 213.)

In medical malpractice cases like the present one, where a state-employed physician provides medical treatment not involving policy decisions, this Court has already concluded that the balancing test supports denial of quasi-judicial immunity. Accordingly, Dr. Goswick is not entitled to quasi-judicial immunity under the balancing test.

### IV. CONCLUSION

Quasi-judicial immunity is only available to state-employed physicians performing discretionary acts within the course and scope of their duties. Since Dr. Goswick did not perform discretionary acts in treating James Gleason, and no policy requires immunity under a balancing test, he is not entitled to assert the affirmative defense of quasi-judicial immunity. Dr. Goswick's motion for summary judgment is therefore DENIED.