Ernesto GONZALEZ, Appellant,

v.

Jesus R. AVALOS, Sr., as the surviving father of Andres Avalos, Deceased, and as the Administrator of the Estate of Andres Avalos, Deceased, Appellee.

No. 08–93–00066–CV.

Court of Appeals of Texas,
El Paso.

Nov. 17, 1993.

Rehearing Denied Dec. 15, 1993.

Dan Morales, Atty. Gen., Edwin M. Smith, Asst. Atty. Gen., Austin, for appellant.

Thomas E. Stanton, El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

This is a case involving defenses of official and governmental immunity. In this interlocutory appeal from a denial of summary judgment, filed pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5), (Vernon Supp. 1993),[1] an employee of the Department of Human Services contends that because he is immune from liability in a suit brought against him for the wrongful death of a child, the court erred in denying his motion for summary judgment. We affirm.

### RELEVANT FACTS

Jesus Avalos, Appellee (Avalos), was the father of two children: Andres, age two, and Ricardo, age five. The children were in the custody of his former wife, Linda Avalos. On November 23, 1988, Avalos entered the El Paso office of Child Protective Services Division (CPS) of the Texas Department of Human Services (DHS) to report his concerns that his children were being abused by their mother's live-in boyfriend, Jesus Alvarez. His report was taken down by Elvia Caldera, a DHS social worker. The allegations made by Avalos to Ms. Caldera were that Ricardo was being physically abused, that he had three or four scratches or bruises on his neck, that he would not talk about the abuse for fear of retaliation, and that he had lost weight during the two month period Alvarez had been living with his mother. Caldera's report was forwarded to her supervisor, Ernesto Gonzalez (Gonzalez), the Appellant, the same day. On November 28, 1988, Gonzalez closed the Avalos case without assigning it for investigation.

On December 14, 1988, Andres was admitted to Vista Hills Hospital for treatment of severe injuries, injuries from which he subsequently died. Avalos, acting as surviving father and administrator of Andres' estate, sued DHS and Gonzalez for the wrongful death, alleging negligence and negligence per se. Gonzalez, who was sued in both his individual capacity and as a DHS employee, sought a summary judgment on several theories of immunity. Gonzalez has brought this interlocutory appeal from the order denying his motion for summary judgment.

---

1. § 51.014. **Appeal From Interlocutory Order**
   A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

   (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1993).

*STANDARD OF REVIEW*

When reviewing a summary judgment appeal, we must determine whether the movant in the trial court carried his burden of showing that there is no genuine issue of a material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. Where the defendant is the movant, in order to prevail, he must by appropriate summary judgment evidence either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and prove conclusively each essential element of an affirmative defense. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.—Dallas 1992, no writ); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ). The basic issue presented to us then is, did Gonzalez establish as a matter of law his non-liability for his alleged negligence by reason of some form of immunity.

*LIABILITY AND IMMUNITY
OF STATE EMPLOYEES*

A state employee may be sued in either of two capacities: in his individual capacity, in which event he is personally liable for any judgment rendered against him; or in his official capacity, in which event any adverse judgment is paid by the state. An employee sued in his official capacity may raise any defense available to the state, including sovereign immunity. *Bagg v. University of Texas Medical Branch at Galveston*, 726 S.W.2d 582, 586 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Russell v. Edgewood Independent School Dist.*, 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). When sued in his individual capacity, the employee is entitled to raise the defense of official immunity, rather than sovereign immunity. *Baker v. Story*, 621 S.W.2d 639, 643 (Tex.App.—San

Antonio 1981, writ ref'd n.r.e.). Avalos sued Gonzalez in both his official and his individual capacity. Gonzalez argues that he was entitled to summary judgment because he is protected from liability by official immunity, by the statutory immunity created by Family Code, Section 34.03, and by sovereign immunity.

*OFFICIAL IMMUNITY*

In his first point of error, Gonzalez contends that as a state officer, he is immune from both criminal and civil liability. Public officials and employees whose jobs are classified as *"quasi-judicial"* are shielded from liability when they act in good faith within the scope of their employment. *Eakle v. Texas Dep't of Human Services*, 815 S.W.2d 869, 875 (Tex.App.—Austin 1991, writ denied); *Russell v. Texas Dep't of Human Resources*, 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied); *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex.App.—Waco 1986, no writ). To prevail on this theory, Gonzalez needed to prove: (1) that he held a *quasi-judicial* position as director of CPS; (2) that he acted within the scope of his authority as a *quasi-judicial* employee; and (3) that he acted in good faith. *Eakle*, 815 S.W.2d at 875; *Austin*, 711 S.W.2d at 66.

A *quasi-judicial* position is one that involves the exercise of discretionary, rather than ministerial, acts. *Eakle*, 815 S.W.2d at 875; *Austin*, 711 S.W.2d at 66. Though the distinction is not always easy to draw, discretionary actions require personal deliberation, decision, and judgment, while ministerial actions require obedience to orders or the performance of a mandated duty. *Travis v. City of Mesquite*, 830 S.W.2d 94, 102 (Tex.1992) (Cornyn, J., concurring); *Austin*, 711 S.W.2d at 67. *Quasi-judicial* actions include discretionary acts such as gathering information in connection with an investigation and making decisions based upon that information. *Eakle*, 815 S.W.2d at 875–76; *Austin*, 711 S.W.2d at 66. The fact that an employee of the state has partly or primarily *quasi-judicial* duties does not eliminate the possibility that he may have some ministerial duties as well.

■ Gonzalez, as a supervisor of CPS, was required to make decisions and exercise discretion as to the extent of investigations and the priorities to be given reported abuse cases. His position with DHS was therefore *quasi-judicial. See Austin,* 711 S.W.2d at 67–68 (DHS employees who investigated a child abuse case held *quasi-judicial* positions).

■ Avalos contends, however, that Gonzalez did not act within the scope of his discretionary authority because he had no discretion under the Texas Family Code Section 34.05(a) to decide whether or not to investigate Avalos' allegations of abuse.[2] We agree. Section 34.05(a) provides that "the Texas Department of Human Services ... *shall make a thorough investigation* promptly after receiving either the oral or written report of child abuse or neglect by a person responsible for a child's care, custody, or welfare.... The department *may assign priorities to investigations* based on the severity and immediacy of the alleged harm to the child...." [Emphasis added]. TEX.FAM. CODE ANN. § 34.05(a) (Vernon Supp.1993). Under Subsection (c), certain requirements for the investigation are specified: "The investigation *shall* include a visit to the child's home, unless the alleged abuse or neglect can be confirmed or clearly ruled out without a home visit, and an interview with and examination of the subject child...." [Emphasis added]. TEX.FAM.CODE ANN. § 34.05(c) (Vernon Supp.1993). Other provisions in the section state what "the investigation *may* include" and where it *"may* be conducted." It

is obvious from a reading of the statute that the legislature chose the uses of the mandatory "shall" and the discretionary "may" very carefully. We hold that those provisions that use "shall" in relation to investigations and by their wording leave the employee no choice are mandatory. The provision requiring DHS to make a thorough investigation leaves no room for an employee to decide that no investigation is necessary when child abuse has been reported. Thus, Gonzalez' decision not to investigate was not within the scope of his authority and discretion. On the other hand, those provisions of Section 34.05 that use "may" or clearly give the employee some choice in how much investigation is necessary and what action is to be taken after completion of the investigation are discretionary. Thus in *Austin,* the Court held that the two DHS employees had official immunity from liability for alleged negligence in conducting the investigation and in failing to remove the child from the dangerous environment. *Austin,* 711 S.W.2d at 67–68.

■ Gonzalez argues that under the system of investigative priorities established by DHS pursuant to the provisions of Section 34.05(a) (quoted above), he was entitled to give Avalos' report of abuse a Priority III classification, which he claims required no investigation. The DHS administrative rules in effect at the relevant time set forth three priorities for intake and investigation. 40 TEX.ADMIN.CODE §§ 49.501 *et seq.* (West 1989).[3] Section 49.502 provided for the assignment of priorities to reports based upon the employee's evaluation of the harm or

---

**2.** Gonzalez asserts that Avalos judicially admitted that Gonzalez was acting within the scope of his employment when Avalos alleged in his petition that "[a]t all time [sic] relevant to this lawsuit ... [Gonzalez and other employees of DHS] ... were acting within the course and scope of their authority and as agents, servants and employees of [DHS]." However, Avalos also pled that Gonzalez had no discretionary authority, and that Gonzalez committed negligence by failing to perform his ministerial duty to conduct an investigation. Judicial admissions may be used to establish facts for summary judgment purposes because such admissions waive proof of the matters admitted, *Galvan v. Public Utilities Board,* 778 S.W.2d 580, 583 (Tex.App.—Corpus Christi 1989, no writ); *see also MBank Brenham, N.A. v. Barrera,* 721 S.W.2d 840 (Tex.1986).

We do not, however, take Avalos' "scope of employment" allegation to be a judicial admission when considered with his other allegations. It is clear that he meant only that while Gonzalez (and the other DHS employees) was acting generally within the scope of his employment when he received the Avalos' child abuse report, he had a mandatory duty to investigate. Thus, Gonzalez was put on notice that he would have to prove that he had the discretionary authority to choose not to investigate the claim of abuse. Under such circumstances, Avalos did not by his allegation, waive proof of Gonzalez' claimed discretionary authority.

**3.** Since amended and recodified at 40 TEX.AD-MIN.CODE §§ 700.101 *et seq.,* eff. Sept. 1, 1992 (West Supp.1993).

threatened harm to the child, the legal base for the services, and DHS and community resources for providing the services. Section 49.503 established Priority I for children who were alleged or found to be abused or neglected and were in immediate danger of death or serious physical harm. Priority II, under Section 49.504, was to be assigned to other children who were alleged or found to be abused or neglected (and who were presumably not in immediate danger of death or serious harm). Priority III, as set forth in Section 49.505 was "for children who are not alleged or found to be abuse or neglected...." It is obvious that under all three priorities, a child could not be found to be abused and neglected without CPS having made at least the minimal investigation required by Family Code Section 34.05. Because Avalos had made allegations of abuse, Gonzalez had no discretion to give the report a Priority III classification but was required to give the case either a Priority I or II assignment and to initiate an investigation within the appropriate period specified by the rules. His action in assigning the report Priority III being outside the scope of his discretionary authority, Gonzalez had no official immunity.[4] Point of Error No. One is overruled.

### STATUTORY IMMUNITY

■ Gonzalez asserts in his second point that the trial court erred in denying him a summary judgment because he has an absolute immunity from liability by virtue of the statutory immunity granted by Section 34.03 of the Family Code. That section provides:

### § 34.03. Immunities

(a) Except as provided by Subsection (b) of this section, a person reporting or assisting in the investigation of a report pursuant to this chapter is immune from liability, civil or criminal, that might otherwise be incurred or imposed. Immunity extends to participation in any judicial proceeding resulting from the report.

(b) Persons who report their own conduct or who otherwise report in bad faith or malice, or assist in the investigation of a report in bad faith or malice, are not protected by this section.

TEX.FAM.CODE ANN. § 34.03 (Vernon Supp. 1993).[5] Gonzalez claims that as a person who investigates and determines the validity of child abuse allegations generally, he is absolutely immune. Of course, the language of the statute grants immunity to a person who assists in *the investigation*, not in investigations generally. Gonzalez by deciding to close the Avalos case without investigation was not "a person ... assisting in the investigation of a report." Because of that fact, we conclude that Gonzalez cannot claim immunity under Section 34.03.[6] Point of Error No. Two is overruled.

4. Gonzalez also contends that he was given discretionary authority to close Avalos' case without investigation under Section 2234 of the CPS Handbook, which seemingly allows such action for certain specified reasons, none of which apply to a report alleging abuse. For example, the reason allowing such action was "1. The situation does not appear to involve abuse, neglect, or substantial risk." The allegations by Avalos raised a fact issue as to the appearance of abuse of his children by his ex-wife's live-in boyfriend and the likelihood of ongoing or recurrent physical harm. If such an appearance existed, Gonzalez would have no discretion under that reason to close the Avalos report, with the result that he would have no official immunity.

Moreover, it cannot be argued that a handbook or internal policies of a state agency can enlarge the authority given to its employees beyond that provided by statute and properly adopted administrative rules. *See State v. Jackson,* 376 S.W.2d 341 (Tex.1964); *Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137–38 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Railroad Commission of*

*Texas v. Lone Star Gas Co.,* 599 S.W.2d 659, 662 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.).

5. Although Section 34.03 was amended in 1989, the amendment merely recodified the section to reflect two amendments adopted by the Legislature in 1987 and in its present form is virtually the same as the section as it read in 1988 when this cause of action arose. *See* Acts 1987, 70th Leg., ch. 253, § 1, eff. Aug. 31, 1987; Acts 1987, 70th Leg., ch. 1052, § 6.07, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 371, § 8, eff. Sept. 1, 1989.

6. Although we find merit in Avalos' contention that the clause in Section 34.03 granting immunity to a person "assisting in the investigation of a report" was intended to apply only to laypersons, such as teachers or doctors, who aid in the DHS investigation of an abuse case and who would not otherwise be immune from liability and not to DHS employees who are conducting the investigation, we need not decide this question at this time in view of our disposition of the point of error.

### SOVEREIGN IMMUNITY

In his third point of error, Gonzalez asserts that he was entitled to a summary judgment because having been sued in his official capacity, he is protected from liability by the same sovereign or governmental immunity defense available to the state. *Bagg,* 726 S.W.2d at 586.

Generally, the state as sovereign is immune from suit unless it has expressly given its consent to be sued. Moreover, even where it has given consent to be sued, the state is immune from liability. *Missouri Pacific R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied). One exception to this rule is provided by the Texas Tort Claims Act (TTCA), which waives the state's immunity from suit and from liability in certain cases. Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001 *et seq.* (Vernon 1986 and Supp.1993). This waiver of immunity, however, is limited to the express provisions of the TTCA. *Wenzel v. City of New Braunfels,* 852 S.W.2d 97, 99 (Tex.App.—Austin 1993, no writ); *see McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex. App.—Fort Worth 1991, no writ).

Despite the state's waiver of its immunity under TTCA, Gonzalez urges that Section 101.026 of TTCA preserves his immunity from being sued in his official capacity. That section reads:

### § 101.026. Individual's Immunity Preserved

To the extent an employee has individual immunity from a tort claim for damages, it is not affected by this chapter.

Tex.Civ.Prac. & Rem.Code Ann. § 101.026 (Vernon 1986). Gonzalez interprets this provision to mean that the sovereign immunity of a state employee sued in his official capacity is retained even though the state has waived its immunity from suit and liability under the TTCA. This interpretation, however, ignores the word "individual" preceding "immunity" in the statute. Section 101.026 *does not preserve sovereign immunity for a state employee sued in his official capacity;* it preserves the official immunity of an employee sued in his individual capacity. *See Salcedo v. Diaz,* 647 S.W.2d 51, 53 (Tex. App.—El Paso, writ ref'd n.r.e.) (as to relevant party), 650 S.W.2d 67 (Tex.), *rev'd on other grounds,* 659 S.W.2d 30 (Tex.1983) (applying Section 101.026's predecessor statute to official immunity of defendant sued in individual capacity). The reason for the rule is that a suit against a state employee in his official capacity is, in substance, a suit against the state. *Eakle,* 815 S.W.2d at 871, *citing Lowe v. Texas Tech,* 540 S.W.2d 297, 298 (Tex.1976) (suit against a state agency is a suit against the state); *see also Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). As a result, the employee enjoys immunity only to the same extent that the state itself does. *Bagg,* 726 S.W.2d at 584; *Russell v. Edgewood Independent School Dist.,* 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). Gonzalez' interpretation of Section 101.026 would provide an employee of the state with sovereign immunity greater than the state's, even though the suit against the employee in his official capacity is considered substantially a suit against the state. No such rule exists by virtue of Section 101.026 or otherwise. An employee's immunity is equivalent to the state's, except when an employee is immune for another reason, such as official immunity. As held above, Gonzalez has no official immunity which would be preserved by Section 101.026.

Avalos pled that the TTCA waives the state's immunity from his suit, on the ground that the suit arises from Gonzalez' misuse of tangible property, i.e., the CPS intake report. Gonzalez has not argued otherwise on this appeal. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.021(2) and 101.025 (Vernon 1986); *Texas Dep't of Mental Health and Mental Retardation v. Petty,* 848 S.W.2d 680, 684 (Tex.1992); *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30, 33 (Tex.1983). Because Avalos alleged that his son's death resulted from "the use, misuse, or failure to use" tangible personal property (the CPS intake report belonging to DHS), the state's immunity from the suit has been waived by the TTCA and Gonzalez is not entitled to a summary judgment based on the

sovereign immunity doctrine. Point of Error No. Three is overruled.

We affirm the trial court's denial of Gonzalez' motion for summary judgment.

LARSEN, Justice, concurring.

I concur with the majority opinion in this case, but write to address an impossible assignment given the appellate courts by our legislature: interlocutory review of issues involving subjective good faith.

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 provides that:

A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

.        .        .        .        .

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or political subdivision of the state.

The legislature passed this statute allowing interlocutory appeal of immunity issues to echo that available for officials sued under federal civil rights laws such as 42 U.S.C. § 1983.[1] What the legislature has ignored, however, is that qualified immunity in federal cases (also called "good faith" immunity) is judged by an objective standard, amenable to summary disposition, while Texas law employs a subjective standard in defining official immunity. An examination of the law granting official immunity in state and federal jurisprudence makes the problem clear.

### THE FEDERAL STANDARD

Before 1982, federal civil rights law recognized that officials could avoid liability for violating citizens' civil rights by meeting a two-pronged test, containing both subjective and objective elements, that: (1) the official held a subjective good faith belief that the challenged actions were lawful; and (2) this belief was objectively reasonable in light of the existing law. *Procunier v. Navarette,*

434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). This test changed dramatically with the U.S. Supreme Court's decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There, the Court announced a new standard which abandoned the subjective element of good faith, substituting the following:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

.        .        .        .        .

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. *Until this threshold immunity question is resolved, discovery should not be allowed.* [Emphasis added.] *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738.

In 1987, the Supreme Court further refined this standard in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), holding that even where conduct appears to have violated a clearly established constitutional principle, good faith immunity will attach where a well-trained officer would not have known that the challenged conduct violated plaintiff's rights. This refinement retained the federal court's objective focus. Thus, under federal law, the internal thought-processes and motivations of an individual defendant are not dispositive or even

---

1. *See* Legislative History of Tex.S.B. 908, 71st Leg., R.S. (1989) committee hearings of 3/28/89 and floor discussion of 4/11/89. Senator Whitmire, who sponsored the legislation, stated before the committee that: "It [the bill] follows federal law, which is the rule particularly in civil rights cases and others, where an immunity from prosecution would ultimately be upheld, it would not be right to put that person through the [litigation] process."

relevant; rather, good faith immunity is defeated upon summary judgment only where well-established law is violated, and a reasonable officer in defendant's place would have known that the actions were illegal. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736; *Anderson*, 483 U.S. at 647, 107 S.Ct. at 3043. The test focuses upon an objective question, and is thus reviewable by summary judgment and by interlocutory appeal. Before the U.S. Supreme Court formulated this standard, good faith immunity in federal civil rights suits was not commonly reviewed on summary judgment, and no interlocutory appeal was available. Indeed, in explaining its reasons for changing the standard, the Supreme Court noted:

> [D]isputed questions of fact ordinarily may not be decided on motions for summary judgment. And an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury. *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737.

Only with its adoption of the objective standard did the Supreme Court prescribe pre-discovery methods for testing a plaintiff's case. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (adopting objective standard to accommodate summary judgment review); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (providing for interlocutory appeal of summary judgment denials). The legislature, in passing TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) adopted federal procedure without this accompanying federal substance.

### THE STATE STANDARD

Texas state law (in a doctrine analogous to federal good faith immunity) recognizes official immunity for a state employee whose status or actions may be classified as *quasi-judicial*, no matter how erroneous or negligent those actions may be, so long as the official acts in good faith and within the scope of authority. *Russell v. Texas Department*

of Human Resources, 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied); *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex. App.—Waco 1986, no writ). It is the good faith element of this immunity which I find problematic. In contrast to the federal *Harlow* standard, Texas case law contemplates a subjective good faith standard, and characterizes unprotected conduct as that done "wilfully and maliciously." *Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425, 427 (1954); *Russell*, 746 S.W.2d at 514; *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.).

In *Travis v. City of Mesquite*, 830 S.W.2d 94, 103–04 (Tex.1992) (Cornyn, J., concurring), Justice Cornyn noted some of the difficulties in reviewing good faith immunity under the present law. He suggested adopting the *old* federal standard,[2] containing both subjective and objective elements. In formulating a good faith standard under the specific facts of *Travis* (which involved a high-speed car chase by off-duty police officers with a resulting collision and damages to a bystander), Justice Cornyn wrote that he would find a defendant failed to establish good faith if:

> (1) the officer knows that a clear risk of harm to the public in continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the subjective element); or
>
> (2) a reasonably prudent police officer, under the same or similar circumstances, would know that the clear risk of harm to the public in continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the objective element). *Travis*, 830 S.W.2d at 104.

Those courts which have wrestled with determining subjective good faith on interlocutory appeal of a summary judgment have, understandably, glossed over the issue: indeed, these cases commonly, and erroneously, shift the well-established burden of proof on summary judgment. Frequently they re-

---

**2.** He relies upon language in *Harlow v. Fitzgerald* which sets out the old law under *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). *Harlow*, 457 U.S. at 815, n. 25, 102 S.Ct. at 2737, n. 25. He fails to note,

however, that the Supreme Court went on to discuss the perceived failure of this standard in preventing frivolous claims from proceeding to trial, and then adopts the new, purely objective good faith test.

quire plaintiffs to produce evidence of bad faith, rather than requiring defendants to conclusively establish their good faith motivations. *Travis,* 830 S.W.2d at 103; *see Eakle v. Texas Department of Human Services,* 815 S.W.2d 869, 876 (Tex.App.—Austin 1991, writ denied) ("The record contains no showing of bad faith on behalf of the commissioners. . . ."); *Austin v. Hale,* 711 S.W.2d 64, 68 (Tex.App.—Waco 1986, no writ) ("The record did not contain any evidence that [defendants] had acted in bad faith when they conducted the investigation."). This awkward solution, in my opinion, has the undesirable effect of simply eliminating the good faith element of official immunity. Neither trial courts nor courts of appeals can, nor should we be asked to, perform the task set for us here: to determine a defendant's state of mind, whether good or bad, on summary judgment or on interlocutory appeal from its denial.

### PROCEDURE IS INCOMPATIBLE WITH STANDARD

The legislature has grafted federal procedure for reviewing official immunity onto an incongruous body of substantive law. Internal motivation and state of mind, upon which subjective good faith determinations turn, are peculiarly fact-dependent. More than other findings, they depend upon assessment of credibility, surrounding circumstances and demeanor, all things which summary judgment and interlocutory appeal cannot measure. Although we did not reach the good faith element of defendant's official immunity claim here, I write to point out the antagonistic relationship between procedure and substance here.

### CONCLUSION

Appellate courts cannot ascertain an official's subjective good faith on interlocutory appeal from summary judgment. Federal courts have never been required to do so: they adopted simultaneously an objective standard and a procedure for early, summary review of immunity questions. I believe our adoption of federal *procedure,* without altering the *substance* of official immunity, effectively eliminates an essential element of that defense. I cannot think this is an outcome either the Texas Legislature or the Texas courts contemplated. I urge both to examine it.